1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

J.J. and C.D., on behalf of themselves and all others similarly situated

Plaintiffs,

v.

ASHLYNN MARKETING GROUP, INC.,

Defendant.

Case No.:  24-CV-0311-GPC-MSB

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN PART AND DENYING DEFENDANT'S MOTION TO DISMISS IN PART**

**[ECF No. 17]**

On April 2, 2024, Plaintiffs J.J. and C.D. filed their First Amended Complaint ("FAC"), individually and on behalf of three putative classes.  ECF No. 7.  Before the Court is Defendant's motion to dismiss the FAC pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  ECF No. 17.  Plaintiffs filed an opposition on June 14, 2024.  ECF No. 21.  Defendant filed a reply on June 28, 2024.  ECF No. 22.  The Court has considered the papers filed in support of and in opposition to the motion to dismiss and deem this motion appropriate for resolution without oral argument.  *See* L.R. 7.1(d)(1).  For the below reasons, the Court **GRANTS** Defendant's motion to dismiss in part and **DENIES** Defendant's motion to dismiss in part.

1

**FACTUAL BACKGROUND**

Plaintiffs bring a putative "class action against Defendant Ashlynn Marketing Group, Inc. for false, misleading, deceptive, and negligent sales practices regarding its kratom powder, capsule, and liquid extract products" ("kratom products"). FAC ¶ 1. Kratom is a drug derived from the kratom plant, which is indigenous to Southeast Asia. FAC ¶ 15. "[K]ratom works on the exact same opioid receptors in the human brain as morphine and its analogs, has similar effects as such, and critically, has similar risks of physical addiction and dependency, with similar withdrawal symptoms." FAC ¶ 2. Defendant is "a kratom product manufacturer and distributor." FAC ¶ 63. Plaintiffs essentially allege that Defendant failed to disclose kratom's addictiveness to its customers before they purchased Defendant's kratom products. FAC ¶ 4. As a result, Plaintiffs allege that kratom "has sunk its hooks into tens of thousands of unsuspecting customers and caused them serious physical, psychological, and financial harm." FAC ¶ 3.

Kratom "has been used in herbal medicine" in Southeast Asia "since at least the early 19th Century." FAC ¶ 15. Kratom's alkaloids—the chemicals which produce psychoactive effects—interact with the brain's mu-opioid receptor when ingested. FAC ¶¶ 19, 24. The mu-opioid receptor produces "habit-forming effects." FAC ¶ 26. "Kratom is therefore considered by health professionals to be similar to an 'opioid' and a 'quasi-opiate.'" FAC ¶ 28. In fact, Plaintiffs allege that "[t]he addictiveness of kratom has been well-documented for decades and is an established fact in medical literature," FAC ¶ 54, and that "[i]t has been known for decades in the English-speaking world that kratom is highly addictive and has the potential to cause physical and psychological dependence in regular users," FAC ¶ 55. The symptoms of kratom withdrawal include: "irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea,

decreased appetite, chills, inability to control temperature, and extreme dysphoria and malaise." FAC ¶ 33.

"Kratom use in the United States has exploded in popularity over the past decade." FAC ¶ 36. Kratom is often marketed as "a substitute for coffee, a pain reliever, a treatment for opioid withdrawal, an antidepressant, [and] an anti-anxiety supplement." FAC ¶ 40. Because it "does not produce a debilitating 'high' like cocaine or heroin, it is very easy for users to take the drug every day without feeling as though they are developing a drug addiction." FAC ¶ 41. Thus, "addiction can sneak up on unsuspecting users," *id.*, and because "manufacturers and advertisers do not disclose the addictive potential of this drug, many users have found themselves blindsided when they wake up one morning in the throes of withdrawal after having stopped using what they thought was an innocuous supplement." FAC ¶ 42.

"Defendant has received numerous user reports about the addictive potential of kratom in the United States." FAC ¶ 51. Further, Defendant states on its website that "scientists are still conducting comprehensive studies to determine whether abusing Kratom causes addiction, death, and withdrawal symptoms". ECF No. 7 at 13. On information and belief, Plaintiffs also allege that "Defendant has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it." FAC ¶ 50. Thus, Plaintiffs allege that Defendant "knew or should have known that the Products it was selling were highly addictive." FAC ¶ 52. Defendant, however, has not "disclose[d] the addictive potential of kratom on its website or on its Products' packaging." FAC ¶ 53. The packaging, which Plaintiffs allege is "woefully sparse," FAC ¶ 59, includes "a bog-standard disclaimer stating that the Products are not regulated or evaluated by the FDA," FAC ¶ 60.

The named Plaintiffs in this action have had their own experiences with kratom. *See* FAC ¶¶ 68-69. "Plaintiff J.J. first heard about kratom through the internet and saw

nothing about its addictive potential." FAC ¶ 68.  He began purchasing Defendant's kratom products in September 2018, and has continued to purchase them in San Marcos, California.  *Id.*  He reviewed the packaging and labels before purchasing the products, "but there were no disclosures on the bottle that would have corrected his misimpression" that kratom was not addictive.  *Id.*  When he tried to stop using kratom, "he was wracked by intense physical and psychological withdrawal symptoms that were substantially similar to traditional opiates."  *Id.*  "J.J. realized he was addicted to kratom in July 2022."  *Id.*  When he has attempted to quit, he has experienced "intense months of physical and psychological withdrawals, with symptoms including: lethargy, nausea, extreme anxiety, extreme depression, sweating, body aches, restless legs, extreme cravings, extreme restlessness, and minor psychosis."  *Id.*

"Plaintiff C.D. first heard about kratom from a friend who espoused the benefits of the drug without talking about its addictiveness."  FAC ¶ 69.  He began purchasing Defendant's products in 2020 in South Lake Tahoe, California.  *Id.*  Like J.J., C.D. did not know kratom was addictive, reviewed the package and labels before purchasing the products, and saw no disclosures about kratom's addictiveness.  *Id.*  "C.D. realized he was addicted to kratom in late February 2021," after he experienced similar withdrawals to those that J.J. experienced.  *Id.*  "C.D. has been unable to quit using kratom."  *Id.*  Plaintiffs allege that had they known about kratom's addictiveness, they "would have never purchased Defendant's Products," FAC ¶¶ 68-69, or "would have paid less than they did for them," FAC ¶ 47.

Plaintiffs bring a putative class action on behalf of the following three classes:

> All persons nationwide who, within the applicable statute of limitations period, up to and including the date of final judgement in this action, purchased Krave Botanicals kratom products (the "Class");

> All persons nationwide who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased Krave Botanicals kratom products from "www.kravekratom.com" (the "Online Class");
>
> All Class members in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased Krave Botanicals kratom products (the "California Class")

FAC ¶ 70.

Plaintiffs bring six causes of action, including for (1) violations of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200), (2) violations of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1770(a)(5), (7), & (9)), (3) violations of California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500), (4) breach of implied warranty (5) unjust enrichment, and (6) fraudulent omission.  FAC ¶¶ 80-143.

## LEGAL STANDARDS

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

5

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a Rule 12(b)(6) motion, the Court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

## DISCUSSION

Defendant advances a number of arguments as to why Plaintiffs' FAC should be dismissed in its entirety. Many of these arguments overlap across Plaintiffs' causes of action. The Court will address each of them in turn.

### I. Statutes of Limitations

Defendant contends that Plaintiffs' claims are time barred under the applicable statutes of limitations. ECF No. 17-1 at 4-6. Because these issues are potentially dispositive of the relevant claims, the Court will address them first.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotation marks and citation omitted). A complaint can only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (internal quotation marks and citation omitted).

The FAC presents UCL, CLRA, FAL, implied warranty, fraudulent omission, and unjust enrichment claims with statute of limitations ranging from two to four years. *See* Cal. Bus. & Prof. Code § 17208 (four-year statute of limitations for UCL claims); Cal. Civ. Code § 1783 (three-year statute of limitations for CLRA claims); Cal. Civ. Proc. Code § 338(a) (imposing a three-year statute of limitations for "an action upon a liability

created by statute," which includes FAL claims); Cal. Com. Code § 2725(1) (four-year statute of limitations for implied warranty claims); *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 460 (N.D. Cal. 2012) ("In California, the statute of limitations is three years for fraudulent omission claims"); Cal. Civ. Proc. Code § 339(1) (imposing two-year statute of limitations for "[a]n action upon a contract . . . not founded upon an instrument of writing" which includes an unjust enrichment claim).

The instant case was filed on February 16, 2024. ECF No. 1. Plaintiff J.J. alleges that he first purchased Defendant's kratom products in September 2018 and "realized he was addicted to kratom in July 2022." FAC ¶ 68. Plaintiff C.D. alleges that he began purchasing Defendant's kratom products "in 2020" and "realized he was addicted to kratom in late February 2021." FAC ¶ 69. Based upon the initial purchase dates alleged, Defendant argues that all of Plaintiffs' claims are time barred. ECF No. 17-1 at 4-6. Further, Defendant argues that the discovery rule does not apply to implied warranty or unjust enrichment claims, and that Plaintiffs have failed to support application of the discovery rule to the remaining claims. *See* ECF No. 17-1 at 5-6. Plaintiffs agree and concede that the discovery rule does not apply to the implied warranty or unjust enrichment claims. ECF No. 21 at 7. However, Plaintiffs contend that the discovery rule tolled the accruals of the remaining causes of action, and thus saves the UCL, CLRA, FAL and fraud by omission claims.

**A. Discovery Rule**

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). A plaintiff who suspects an injury has been wrongfully caused has a duty to investigate the potential causes of the injury. *Id.* at 808. If the investigation "would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have

brought such information to light." *Id.* at 808-09.  If the complaint shows on its face that the claim would be time barred without the benefit of the discovery rule, the complaint must specifically allege facts showing "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808; *Lauckhart v. El Macero Homeowners Ass'n*, 92 Cal. App. 5th 889, 900 (2023).

### B. Application to Plaintiffs' Claims

Here, the face of the FAC shows that both Plaintiffs made their initial purchase of kratom no later than 2020 and that, absent tolling, the statute of limitations has run out on their claims.

J.J. and C.D. allege that they did not discover their addictions to kratom until July 2022 and late February 2021, respectively.  FAC ¶¶ 68-69.  Both Plaintiffs allege that they discovered their injury after they were "wracked by intense physical and psychological withdrawal symptoms that were substantially similar to traditional opiates" when they attempted to cease using kratom.  FAC ¶¶ 68-69.  Plaintiffs could not have suspected an injury until they realized they were addicted to Defendant's kratom products.  At that time, they would have suspected wrongdoing on Defendant's part caused them injury, and therefore their cause of action would have accrued.  *See Dent v. Nat'l Football League*, 2021 WL 5987260, at *14-15 (N.D. Cal. Dec. 17, 2021) (finding that former NFL players' "claim[s] for drug addiction accrued" when the players overcame their drug dependencies, because "at that time [they] understood that [their] drug addiction[s] [were] causally linked to [their] drug consumption in the NFL."). Plaintiffs sufficiently alleges the time and manner of discovery as to the UCL, CLRA, FAL and fraud by omission claims.

The Court further finds that Plaintiffs adequately allege that they could not have made an earlier discovery of the addictiveness of kratom or their own personal addictions to kratom.  When Plaintiffs first purchased kratom, they both believed them to be non-

addictive.  Plaintiff J.J. alleges that he "first heard about kratom through the internet and saw nothing about its addictive potential."  FAC ¶ 68.  And "Plaintiff C.D. first heard about kratom from a friend who espoused the benefits of the drug without talking about its addictiveness."  FAC ¶ 69.  Both Plaintiffs "reviewed the Krave packaging and labels, but there were no disclosures on the bottle that would have corrected [their] misimpressions."  FAC ¶¶ 68-69.  And both increased their consumption over time without realizing they were building addictions.  *Id.*  Plaintiffs further allege that "advertisements and word-of-mouth disclosures" tend to describe kratom's benefits as a pain reliever and antidepressant, among other things, while being silent on its "addictive potential."  FAC ¶¶ 40-42.  The information available to Plaintiffs about kratom's addictiveness was ambiguous at best, and the addiction was creeping up on them with little notice.  Thus, the earliest they could have made their discovery is when they in fact realized they were addicted.  The Court finds these allegations sufficient to apply the discovery rule to the UCL, CLRA, FAL and fraudulent omission claims at this stage.

Applying the discovery rule, Plaintiff J.J.'s claim accrued when he allegedly discovered his kratom addiction in July 2022.  FAC ¶ 68.  Plaintiff C.D.'s claim accrued when he allegedly discovered his kratom addiction in late February 2021.  FAC ¶ 69.  Accordingly, the Court finds that both Plaintiffs' UCL, CLRA, FAL, and fraudulent omission claims are not time barred.  To the extent that Plaintiffs conceded that the discovery doctrine does not apply to implied warranty and unjust enrichment claims, these causes of action are time barred.  The Court thus GRANTS Defendant's motion to dismiss these two claims and DENIES Defendant's motion to dismiss as to all other claims.

## II.   Rule 9(b)

Defendant argues that Plaintiffs' FAC fails to meet Rule 9(b)'s heightened pleading standards for claims sounding in fraud.  ECF No. 17-1 at 6-9, 13-14.  In its

opposition, Plaintiffs argue that a slightly relaxed Rule 9(b) standard applies because their claims are based on fraudulent omissions, and that they meet the heightened standards either way.  ECF No. 21 at 7-13.

Where a claim alleges fraud or is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*  Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  To meet this requirement, plaintiffs must allege the "who, what, when, where, and how" of the alleged fraudulent conduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

"However, because fraudulent omission alleges a failure to act instead of an affirmative act," such claims "can succeed without the same level of specificity required by a normal fraud claim."  *Goldstein v. Gen Motors LLC*, 517 F. Supp. 3d 1076, 1086 (S.D. Cal. 2021) (citing *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)).  But fraudulent omission claims must still be pled with a level of particularity.  *Goldstein*, 517 F. Supp. 3d at 1086.  Plaintiffs must describe "the content of the omission and where the information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information."  *Id.* (quoting *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).

Here, Plaintiffs' California consumer fraud and common law fraudulent omission claims are grounded in fraud, and thus are subject to Rule 9(b).  *See Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103-05 (9th Cir. 2003) (applying Rule 9(b) to UCL and

1   FAL claims to the extent they alleged fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

2   1125 (9th Cir. 2009) (applying Rule 9(b) to UCL and CLRA claims grounded in fraud).

3   Because all of Plaintiffs' remaining claims hinge on the fraudulent omission allegations,

4   Plaintiff is required to meet the slightly lower Rule 9(b) pleading standard as to all

5   claims.

6          The Court finds that Plaintiffs have met both Rule 9(b)'s heightened pleading

7   standard and the slightly lower Rule 9(b) standard for fraudulent omission claims.

8   Plaintiffs allege that "Defendant has failed to disclose the addictive potential of kratom

9   on its website or on its Products' packaging" ("who," "what," and "how").  FAC ¶ 53.

10  Plaintiff J.J. alleges that he "began purchasing Krave branded kratom capsules in

11  September 2018" and "realized he was addicted to Kratom in July 2022."  FAC ¶ 68.  J.J.

12  consumed these capsules every day for two and a half years.  *Id.*  Plaintiff C.D. "began

13  purchasing Krave branded kratom capsules in 2020" and "realized he was addicted to

14  kratom in late February 2021."  FAC ¶ 69.  C.D. consumed these capsules every day

15  "[f]or about five years" ("when").  *Id.*  Plaintiff "J.J. made his purchases in and around

16  San Marcos, California," while Plaintiff "C.D. made his purchases in and around South

17  Lake Tahoe, California" ("where").  FAC ¶¶ 68-69.  These allegations are specific

18  enough to give Defendant notice of the "who," "what," "when," "where," and "how" of

19  the alleged fraudulent conduct.  *Cooper*, 137 F.3d at 627.

20         Plaintiffs also contend that "the addictive potential of kratom is a material fact to

21  reasonable consumers which would help inform their purchase and consumption

22  decisions," but that "Defendant's products have no information, whatsoever, that kratom

23  is similar to an opioid, is habit-forming, and that regular use will result in opioid-like

24  dependency."  FAC ¶ 46.  "Defendant's Products' packaging . . . is woefully sparse,"

25  FAC ¶ 59, as it contains only "a bog-standard disclaimer stating that the Products are not

26  regulated or evaluated by the FDA," FAC ¶ 60.  Because of this, Plaintiffs allege that

27

28

when they made their first purchases, they "reviewed the Krave packaging and labels, but there were no disclosures on the bottle that would have corrected [their] misimpression[s]." FAC ¶¶ 68-69. Had Plaintiffs known of kratom's addictive potential, they "would never have purchased Defendant's Products." *Id.*

These allegations sufficiently describe "the content of the omission and where the information should or could have been revealed." *Goldstein*, 517 F. Supp. 3d at 1086. Accordingly, Plaintiffs' allegations are sufficient under Rule 9(b).

## III. Fraud-Based Claims

Defendant contends that Plaintiffs fail to state a claim upon which relief can be granted because they have not sufficiently pled several elements of fraud-based claims. ECF No. 17-1 at 9-12. Defendant first argues that Plaintiffs have not sufficiently alleged reliance on any statement or omission. *Id.* at 9-11. Next, Defendant argues that "[t]o the extent Plaintiffs' claims are based on alleged nondisclosures, those claims fail for lack of a duty on Ashlynn Marketing's part to disclose kratom's supposed addictiveness." *Id.* at 12.

### A. Reliance

Actual reliance is an essential element of a fraudulent omission claim. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). To plead reliance, "a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Id.* A plaintiff need only show that the omission "was a substantial factor in his decision." *Id.* A plaintiff can make this showing "by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.*

Defendant, in its motion to dismiss, primarily advances an argument based on reliance on misleading advertisements (i.e., affirmative statements), rather than omissions. *See* ECF No. 17-1 at 9-11. While Defendant attempts to analogize the instant

1    case to case law regarding misleading advertisements, *see id.*, these arguments largely
2    miss the point.  Plaintiffs' opposition to the motion to dismiss fares no better on this
3    issue.  While Plaintiffs first argue that the FAC meets the pleading standards for
4    omissions, they then flip to arguing that they "relied on Defendant's other
5    representations," including the misleading company logo and leaf patterns on the
6    packaging.  ECF No. 21 at 12-13.

7        Ultimately, the Court finds that the pleading standards for omissions apply and the
8    FAC adequately alleges reliance.  *Chiulli v. Am. Honda Motor Co.* is instructive here.
9    There, plaintiffs brought a putative class action regarding vehicles that were equipped
10   with an allegedly defective infotainment system, which the plaintiffs claimed posed an
11   unreasonable safety hazard.  *Chiulli v. Am. Honda Motor Co., Inc.*, 690 F. Supp. 3d 1038,
12   1061 (N.D. Cal. 2023).  Plaintiffs alleged that (1) defendant was aware of and failed to
13   disclose a defect in the infotainment system, (2) plaintiffs researched, test drove, and
14   discussed the vehicles with dealership employees before making their purchases, and (3)
15   had defendant disclosed the infotainment system defect, plaintiffs would not have
16   purchased the vehicles or would have paid less for them.  *Id.* at 1061.  The court found
17   that these allegations were sufficient to establish reliance at the pleading stage because
18   they show that plaintiffs "would have behaved differently had the disclosure been made."
19   *Id.*; *Daniel*, 806 F.3d at 1225; *see also Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1018
20   (N.D. Cal. 2020) (finding that plaintiff established reliance where they alleged that (1)
21   defendant did not disclose material information about the product, (2) plaintiffs reviewed
22   marketing materials prior to making their purchases, and (3) the plaintiffs would not have
23   made the purchases if the information had been disclosed).

24       Similarly, here, Plaintiffs adequately allege that they would have behaved
25   differently if the omitted information had been disclosed.  Plaintiffs allege that Defendant
26   "has received numerous user reports about the addictive potential of kratom."  FAC ¶¶

27
28

50-51.  And, Defendant allegedly reports on its website that "scientists are still conducting comprehensive studies to determine whether abusing Kratom causes addiction, death, and withdrawal symptoms". ECF No. 7 at 13. Finally, Plaintiffs allege "[u]pon information and belief, Defendant has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it".[1]  Nonetheless, Defendant "failed to disclose the addictive potential of kratom on its website or on its Products' packaging."  FAC ¶ 53.  And Plaintiffs allege that when they made their purchases, they "reviewed the Krave bottle's packaging and labels, but there were no disclosures on the bottle" regarding kratom's addictive potential.  FAC ¶¶68-69.  Had Defendant not omitted information regarding the addictive potential of kratom, Plaintiffs allege that they "may not have purchased Defendant's Products or would have paid less than they did for them."  FAC ¶ 47; *see also* FAC ¶¶ 68-69, 98, 108, 120, 126, 143. Plaintiffs make the allegations similar to ones that were found to be sufficient in *Chiulli*

---

[1] Allegations based on information and belief usually do not satisfy Rule 9(b), but, in corporate fraud cases, "the rule may be relaxed as to matters within the opposing party's knowledge," or where "the allegations are accompanied by a statement of facts on which the belief is founded."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  Here, Plaintiffs would not know the specifics of Defendant's interactions with growers and distributors in Southeast Asia without having conducted discovery. Thus, information regarding such interactions is currently in Defendant's sole possession. And Plaintiff bases these allegations on the longstanding knowledge of kratom dependence and addiction in Southeast Asia, FAC ¶¶ 48-49, which is where kratom is derived from, FAC ¶ 15.  In the Court's view, these facts make plausible the inference that Defendant interacts with growers and distributors in Southeast Asia who may have disclosed kratom's addictiveness to Defendant.  *See Ramirez v. Bank of Am., N.A.*, 634 F. Supp. 3d 733, 740 (C.D. Cal. 2022) (finding that allegations based on information and belief satisfied Rule 9(b) where plaintiffs "only use information and belief pleading" as to one group of allegations and "[s]uch facts are not readily available to plaintiffs prior to discovery").  The Court thus accepts the allegations on information and belief as true at this stage and considers them in conjunction with Plaintiffs' other allegations.

and *Anderson*.  Specifically, Plaintiffs sufficiently allege that they would have behaved differently if Defendant had disclosed kratom's addictiveness.  Thus, the Court finds that Plaintiffs have adequately pled reliance.

### B. Duty

To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose."  *Anderson*, 500 F. Supp. 3d at 1012 (quoting *Hodson v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018).  Here, the first option does not apply.  Accordingly, Defendant argues that Plaintiffs' "claims fail for lack of a duty on [Defendant's] part to disclose kratom's supposed 'addictiveness.'"  ECF No. 17-1 at 12.

A defendant "has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors."  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1069, 1085 (N.D. Cal. 2022). [2]  "The *LiMandri* factors are: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts."  *Id.* (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).  Here, Plaintiffs assert a duty was created by

---

[2] While there is some "disarray" regarding the test for determining whether a defendant has a duty to disclose, the Ninth Circuit appears to have endorsed this approach. *Hammerling*, 615 F. Supp. 3d at 1085 (citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (stating that defendant lacked a duty to disclose because the plaintiffs failed to plead that the defect "affects the central functionality of the [] products.")).

24-CV-0311-GPC-MSB

Defendant's exclusive knowledge of material facts not known to the Plaintiffs and active concealment of material facts from Plaintiffs.  ECF No. 21 at 14-16.

### i.  **Defendant's kratom products pose an unreasonable safety risk.**

Plaintiffs sufficiently allege that kratom's addictiveness poses an unreasonable safety risk.  A plaintiff must allege "a sufficiently close nexus between the claimed defect and the alleged safety issue."  *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1028 (9th Cir. 2017).  While "the injury risk need not have come to fruition," a plaintiff's allegations "must describe more than merely conjectural and hypothetical injuries."  *Id.* (internal citations and quotation marks omitted).

Plaintiffs allege that "[k]ratom is perniciously addictive" because it "works on the exact same [mu-opioid] receptors in the human brain as morphine and its analogs, has similar effects as such, and critically, has the same risk of physical addiction and dependency, with similar withdrawal symptoms."  FAC ¶¶ 2-3.  And "[t]he symptoms of kratom withdrawal are very similar to those of traditional opiate withdrawal": "irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, and extreme dysphoria and malaise."  FAC ¶ 33.  Plaintiffs allege that kratom is "a particularly insidious drug because addiction can sneak up on unsuspecting users and can hold them in its grip despite their best efforts to stop using."  FAC ¶ 41.  Plaintiffs themselves have dealt with these repercussions.  For example, Plaintiff J.J. "experienc[ed] intense months of physical and psychological withdrawals, with symptoms including: lethargy, nausea, extreme anxiety, extreme depression, sweating, body aches, restless legs, extreme cravings, extreme restlessness, and minor psychosis."  FAC ¶ 68.  The Court finds these allegations sufficient to show that Defendant's kratom products pose an unreasonable safety risk. *See Hammerling*, 615 F. Supp. 3d at 1085 n. 8 (reasoning that "a duty to disclose existed"

where omitted facts regarding the addictiveness and frequent abuse of opioids "related to an unreasonable safety hazard <u>and</u> were material and went to opioids' central function.") (emphasis in original) (discussing *City and Cnty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 690 (N.D. Cal. 2020)).

ii. **Defendant has exclusive knowledge of kratom's addictiveness.**

Because Plaintiffs have pled that Defendant's kratom products pose an unreasonable safety risk, they need only allege one of the *LiMandri* factors.  While Defendant argues that "Plaintiffs provide no allegations to claim that [Defendant] had 'exclusive knowledge' regarding kratom's addictive potential," ECF No. 17-1 at 12, this contention is incorrect.  The Court finds that Plaintiffs sufficiently allege that Defendant had exclusive knowledge of kratom's addictiveness.

"Exclusive knowledge can be established where . . . the defendant knew of a defect while the plaintiffs did not and, given the nature of the defect, it was difficult to discover."  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014).  It is not defined literally: a plaintiff need only allege that "the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only . . . limited publicly available information about the defect."  *Salas v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 7486600, at *10 (C.D. Cal. Sept. 27, 2016).

Plaintiffs allege that reasonable consumers do not expect that kratom "operates like an opioid, with similar addiction and dependency risks."  FAC ¶ 3.  Kratom is often marketed as "a substitute for coffee, a pain reliever, a treatment for opioid withdrawal," and more, without disclosure of its addictive nature.  FAC ¶ 40.  And "[b]ecause the manufacturers and advertisers do not disclose the addictive potential of this drug, many users have found themselves blindsided when they wake up one morning in the throes of withdrawal after having stopped using what they thought was an innocuous supplement."  FAC ¶ 42.  In the United States, "advertisements and word-of-mouth disclosures do not

make [kratom's addictiveness] clear to consumers."  FAC ¶ 41; *see also* FAC ¶ 43 (internet forum user stating that they "researched kratom before using it and almost every site promoted that its [sic] harmless with healthy benefits").  Given the confusing, unclear, and often contradictory nature of information available to consumers, kratom's addictiveness is not "readily apparent" whatsoever.  *See Salas*, 2016 WL 7486600, at *10.

On the other hand, Plaintiffs adequately allege that Defendant knew of kratom's addictiveness.  Plaintiffs allege that Defendant "received numerous user reports about the addictive potential of kratom," FAC ¶ 51, posted on their website that "scientists are still conducting comprehensive studies to determine whether abusing Kratom causes addiction, death, and withdrawal symptoms," ECF No. 7 at 13, and "interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it." FAC ¶ 50.  These allegations, taken together, support an inference that "Defendant [] knew or should have known that the Products it was selling were highly addictive."  FAC ¶ 52.

Defendants argue that the FAC is self-defeating because it also alleges that "[i]t has been known for decades in the English-speaking world that kratom is highly addictive and has the potential to cause physical and psychological dependence in regular users."  ECF 22 at 5-6; FAC ¶ 55.  However, considering the context, the FAC was likely referring to the fact that "[t]he addictiveness of kratom has been well-documented for decades and is an established fact *in medical literature*."  FAC ¶ 54 (emphasis added).  Plaintiffs thus allege that, while easily accessible information, such as advertisements and word of mouth, was littered with misinformation about kratom, there is clear, albeit less accessible, medical literature on kratom's addictiveness.  Even though such information is publicly available, Plaintiffs still adequately allege that Defendant had superior and exclusive knowledge of the information.  *See In re JUUL Labs, Inc., Mktg., Sales Pracs.,*

24-CV-0311-GPC-MSB

*and Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 628-29 (N.D. Cal. 2020) (finding that, even though information "was publicly available to plaintiffs through studies and news articles[,] . . . plaintiffs plausibly allege[d] that [defendant] had exclusive and superior knowledge of specific and undisclosed or not adequately disclosed information"); *MyFord Touch*, 46 F. Supp. 3d at 960 (finding that publicly available knowledge is "far from being dispositive," as it "does not establish that either the public or Plaintiffs knew or should have known of the severity of the problems.").

The Court finds the FAC's allegations adequately support a duty to disclose. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' claims on these grounds.

## IV. Equitable Claims

Defendant sets forth several arguments for the dismissal of Plaintiffs' UCL and FAL claims for equitable relief.[3]  Primarily, Defendant argues that Plaintiffs have not alleged that legal remedies would be inadequate, which is required by *Sonner v. Premium Nutrition Corp.* 971 F.3d 834, 841-44 (9th Cir. 2020).  Under *Sonner*, a federal court sitting in diversity does not have equitable jurisdiction over equitable state law claims if the plaintiff does not establish that she lacks an adequate remedy at law.  *Id.* at 844.

Plaintiffs concede that the Court does not have equitable jurisdiction over Plaintiffs' equitable claims under *Sonner*, but requests that the Court dismiss the equitable claims without prejudice for refiling in state court.  ECF No. 21 at 18-19.  In a post-*Sonner* decision, the Ninth Circuit recently held that a district court that lacked

---

[3] While not clearly outlined in the parties' briefs, the UCL and FAL only provide for equitable remedies.  *See* Cal. Bus. & Prof. Code §§ 17203, 17535; *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ("damages are not available under [Cal. Bus. & Prof. Code] section 17203"); *Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976) (noting that the FAL does "not authorize recovery of damages by private individuals").

19

equitable jurisdiction over a UCL claim should have dismissed the claim without prejudice for "refiling the same case in state court."  *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314-15 (9th Cir. 2022); *see also Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) ("Dismissals for lack of jurisdiction should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.") (internal citation and quotation marks omitted).

Defendant argues that permitting Plaintiffs to refile in state court would amount to prohibited claim splitting and "guarantee gross judicial efficiency."  ECF No. 22 at 6-7. However, the Court does not agree with this characterization of such a disposition. Plaintiffs do not appear to be engaging in gamesmanship to have multiple opportunities at litigation, *see United States v. Haytian Republic*, 154 U.S. 118, 125 (1894), or to harass Defendant with increased litigation, *see Clements v. Airport Auth. Of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995).  Rather, Plaintiffs simply concede that the Court does not have equitable jurisdiction over Plaintiffs' claims for equitable relief.  And "where federal law bars us from considering the merits of state-law claims, we also lack authority to prevent state courts from doing so."  *Guzman*, 49 F.4th at 1315.  As such, the Court is without power to prevent Plaintiffs from refiling their equitable claims in state court.  *See Bowerman v. Field Asset Servs.*, No. 3:13-cv-00057-WHO, 2023 WL 5111961, at *6-8 (N.D. Cal. Aug. 9, 2023) (rejecting argument that dismissing UCL claims for lack of equitable jurisdiction without prejudice will lead to "inefficient and duplicative litigation")

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiffs' UCL and FAL claims without prejudice.

**V.   Nationwide Class**

Defendant, relying on *Mazza v. American Honda Motor Co.*, 666 F.3d 581, argues that "Plaintiffs' nationwide class allegations fail, or in the alternative should be stricken."

1    ECF No. 17-1, 20-25.  Plaintiffs first respond that a choice of law analysis is not

2    necessary because the California statutes protect the out-of-state class members as well as

3    the California residents.  ECF No. 21 at 20-22.  Plaintiffs further argue that even if a

4    choice of law analysis was necessary, discovery must take place first.  *Id.* at 22-25.

5    　　　Here, Plaintiffs seek to certify two separate nationwide classes and a California

6    class, FAC ¶ 70, and brings FAL, CLRA, UCL, unjust enrichment, fraudulent omission,

7    and breach of implied warranty claims on behalf of those classes, *id.* ¶ 74.

8    　　　In *Mazza*, the Ninth Circuit held that each "class member's consumer protection

9    claim should be governed by the consumer protection laws of the jurisdiction in which

10   the transaction took place."  666 F.3d at 594.  However, district courts are split on

11   whether dismissal of nationwide classes is appropriate at the motion to dismiss stage.

12   *Compare In re Clorox Consumer Litigation*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal.

13   2012) ("Since the parties have yet to develop a factual record, it is unclear whether

14   applying different state consumer protection statutes could have a material impact on the

15   viability of Plaintiffs claims"); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159

16   (C.D. Cal. 2012) ("[I]t would be premature to speculate about whether the difference in

17   various states' consumer protection laws are material in this case."); *Zapata Fonseca v.

18   Goya Foods Inc.*, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016) (denying dismissal

19   of nationwide class because *Mazza*, which was decided at the class certification stage and

20   not on a motion to dismiss, depended heavily on a detailed choice-of-law analysis that

21   compared how various states' consumer protection laws applied to the facts of the

22   plaintiffs' claims and the defendant failed to conduct such an analysis in its motion to

23   dismiss); *with Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *5 (C.D. Cal. June 24,

24   2016) ("The Court notes that while *Mazza* was decided at the class certification stage, the

25   decision 'applies generally and is instructive when addressing a motion to dismiss.'")

26   (quoting *Frezza v. Google, Inc.*, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22,

27

28

24-CV-0311-GPC-MSB

2013)); *Davison v. Kia Motors America, Inc.*, 2015 WL 3970502, at *2 (C.D. Cal. 2015) (conducting choice of law analysis at motion to dismiss stage).

While *Mazza* may ultimately apply to the instant case, which also involves a California Defendant and the applicability of California's consumer fraud statutes to out-of-state Plaintiffs, "Plaintiffs should be given an opportunity through discovery to demonstrate that a nationwide class is viable at the class certification stage." *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1013 (S.D. Cal. 2021) (Curiel, J.). And while Defendant provided a choice of law analysis in its motion to dismiss, the analysis was not exhaustive. Both parties should have an opportunity to more fully develop their analyses at the class certification stage, after discovery has taken place. *See id.*; *see also Forcellati*, 876 F. Supp. 2d at 1159 ("Until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case.")

Accordingly, the Court DENIES Defendant's motion to dismiss and motion to strike the nationwide class allegations.

## VI.  LEAVE TO AMEND

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401. Leave to amend would be futile as to the claims for implied warranty and unjust enrichment given Plaintiff's concession that the discovery rule does not apply. As to the equitable claims under the UCL and FAL, Plaintiff does not seek leave to amend but only a dismissal without prejudice so that the claims can be filed in state court.

22

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' Counts One (UCL) and Three (FAL) are DISMISSED without prejudice. Defendant's motion to dismiss Plaintiffs' Counts Two (CLRA) and Six (Fraud) is DENIED.  Plaintiffs' Counts Four (Implied Warranty) and Five (unjust enrichment) are DISMISSED without leave to amend.  Defendant's motion to dismiss and motion to strike the nationwide class allegations are DENIED.

**IT IS SO ORDERED.**

Dated:  September 20, 2024

Hon. Gonzalo P. Curiel
United States District Judge

24-CV-0311-GPC-MSB