1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT
9                         SOUTHERN DISTRICT OF CALIFORNIA
10

11   J.J., C.D., C.B., and D.F., individually and        Case No.: 24-cv-00311-GPC-MSB
12   on behalf of all other similarly situated,
                                                          **ORDER GRANTING IN PART AND**
                                      Plaintiffs,         **DENYING IN PART DEFENDANT'S**
13                                                        **MOTION TO DISMISS**
     v.
14                                                        **[ECF No. 57]**
     ASHLYNN MARKETING GROUP,
15   INC.,
16                                    Defendant.
17

18          On April 2, 2024, Plaintiffs J.J., C.D., C.B., and D.F. filed their Consolidated Class
19   Action Complaint, individually and on behalf of three putative classes, alleging that
20   Defendant failed to warn consumers of the potentially addictive nature of its products,
21   which contain dried leaves from a plant called kratom.  ECF No. 50 ("CCAC") ¶ 1.
22   Before the Court is Defendant's motion to dismiss the CCAC pursuant to Federal Rule of
23   Civil Procedure ("Rule") 12(b)(6).  ECF No. 57-1.  On May 5, 2025, Plaintiffs filed an
24   opposition.  ECF No. 63.  On May 19, 2025, Defendant filed a reply.  ECF No. 68.  For
25   the below reasons, the Court GRANTS Defendant's motion to dismiss in part and
26   DENIES Defendant's motion to dismiss in part.
27
28                                              1
                                                                        24-cv-00311-GPC-MSB

# BACKGROUND

## I.    Factual Background

Plaintiffs bring a "class action lawsuit against Defendant Ashlynn Marketing Group, Inc. for false, misleading, deceptive, and negligent sales practices regarding its kratom powder, capsule, and liquid extract products" (the "kratom products"). CCAC ¶ 1. Kratom is a plant indigenous to Southeast Asia. *Id.* ¶ 16. "[T]he active alkaloids in kratom … work on the exact same opioid receptors in the human brain as morphine and its analogs" and "has the same risks of addiction, dependency, and painful withdrawal symptoms, among various other negative side effects." *Id.* ¶ 1. Defendant is "a kratom product manufacturer and distributor." *Id.* ¶ 66. Plaintiffs essentially allege that Defendant failed to disclose kratom's addictiveness to consumers before they purchased Defendant's kratom products. *Id.* ¶¶ 2–5. As a result, Plaintiffs allege that kratom "has sunk its hooks into tens of thousands of unsuspecting customers and caused them serious physical, psychological, and financial harm." *Id.* ¶ 2.

Kratom "has been used in herbal medicine" in Southeast Asia "since at least the early 19th Century." *Id.* ¶ 16. Kratom's active alkaloids—the chemicals which produce psychoactive effects—interact with the brain's mu-opioid receptor when ingested. *Id.* ¶¶ 20–28. The mu-opioid receptor produces "habit-forming effects." *Id.* ¶ 27. "Kratom is therefore considered by health professionals to be similar to an 'opioid' and a 'quasi-opiate.'" *Id.* ¶ 29. The symptoms of kratom withdrawal include: "irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, and extreme dysphoria and malaise." *Id.* ¶ 34.

"Kratom use in the United States has exploded in popularity over the past decade." *Id.* ¶ 37. Kratom is often marketed as "a substitute for coffee, a pain reliever, a treatment for opioid withdrawal, an antidepressant, [and] an anti-anxiety supplement," while

2

advertisements also say "that it improves focus and gives users a boost of energy to get through the day." *Id.* ¶ 41. Because it "does not produce a debilitating 'high' like cocaine or heroin, it is very easy for users to take the drug every day without feeling as though they are developing a drug addiction or harming themselves." *Id.* ¶ 42. Thus, "addiction can sneak up on unsuspecting users," *id.*, and because "manufacturers and advertisers do not disclose the addictive potential of this drug, many users have found themselves blindsided when they wake up one morning in the throes of withdrawal after having stopped using what they thought was an innocuous supplement," *id.* ¶ 43.

Plaintiffs allege that, "as a kratom product manufacturer and distributor, Defendant occupied a position of superior knowledge to the average reasonable consumer, who likely knows next to nothing about kratom." *Id.* ¶ 66. "Defendant has received numerous user reports about the addictive potential of kratom in the United States." *Id.* ¶ 54. On information and belief, Plaintiffs also allege that "Defendant has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it." *Id.* ¶ 53. Thus, Plaintiffs allege that Defendant "knew or should have known that the Products it was selling were highly addictive." *Id.* ¶ 55. Defendant, however, "has failed to disclose the addictive potential of kratom on its website or on its Products' packaging." *Id.* ¶ 56. The packaging, which Plaintiffs allege is "woefully sparse," *id.* ¶ 60, includes "a bog-standard disclaimer stating that the Products are not regulated or evaluated by the FDA," *id.* ¶ 62. Below are representative images of Defendant's kratom products' packaging.

1
2
3
4
5
6
7
8
9
10
11

 

12  *Id.* ¶ 60.

13        The named Plaintiffs in this action have had their own experiences with kratom.

14  *See id.* ¶¶ 71–76.  "Plaintiff J.J. first heard about kratom through the internet and saw

15  nothing about its addictive potential."  *Id.* ¶ 71.  He began purchasing Defendant's

16  kratom products in September 2018, and has continued to purchase them in San Marcos,

17  California.  *Id.*  He reviewed the packaging and labels before purchasing the products,

18  "but there were no disclosures on the bottle that would have corrected his misimpression"

19  that kratom was not addictive.  *Id.*  When he tried to stop using kratom, "he was wracked

20  by intense physical and psychological withdrawal symptoms that were substantially

21  similar to traditional opiates."  *Id.*  "J.J. realized he was addicted to kratom in July 2022."

22  *Id.*  When he has attempted to quit, he has experienced "intense months of physical and

23  psychological withdrawals, with symptoms including: lethargy, nausea, extreme anxiety,

24  extreme depression, sweating, body aches, restless legs, extreme cravings, extreme

25  restlessness, and minor psychosis."  *Id.*

26
27
28

4

"Plaintiff C.D. first heard about kratom from a friend who espoused the benefits of the drug without talking about its addictiveness." *Id.* ¶ 72. He began purchasing Defendant's products in 2020 in South Lake Tahoe, California. *Id.* Like J.J., C.D. did not know kratom was addictive, reviewed the package and labels before purchasing the products, and saw no disclosures about kratom's addictiveness. *Id.* "C.D. realized he was addicted to kratom in late February 2021," after he experienced similar withdrawals to those that J.J. experienced. *Id.* "C.D. has been unable to quit using kratom." *Id.*

Plaintiff C.B. first learned about kratom while searching for a way to end her dependence on prescription painkillers following a surgery. *Id.* ¶ 73. She began purchasing kratom products at a smoke shop in Victorville, California in 2021. *Id.* "When purchasing Defendant's Products, C.B. examined the packaging for a label warning about addiction or dependence or dosing instructions and did not see one." *Id.* Plaintiff C.B. realized she was addicted to kratom around the end of 2023, when she first tried to quit using kratom. *Id.* ¶ 74. Plaintiff C.B. has since tried to quit kratom multiple times, but each time, "she experiences symptoms of irritability, nausea, opioid-like withdrawals, malaise, lack of energy, and severe brain fog." *Id.* Plaintiff C.B. continues to use kratom products to-date. *Id.* ¶ 75.

"Plaintiff D.F. first heard about Krave kratom at a corner store and thought it might help him with physical pain and anxiety." *Id.* ¶ 76. He "was never warned about the risks of taking kratom from the store for from reading the Krave Product's packaging when he purchased it … from the 202 Mobil gas station in Peekskill, New York." *Id.* Plaintiff D.F. quit using kratom in or around June 2024. *Id.* At that point, he experienced withdrawal symptoms, including "flu-like symptoms, insomnia, sweating, nausea, diarrhea, and … seizures—a first for him—that he believes are related to his kratom use." *Id.* Because of these "agonizing" symptoms, Plaintiff D.F. "realize[d] how truly addicted" he was. *Id.*

Plaintiffs allege that, had they known about kratom's addictiveness, they "would have never purchased Defendant's Products," *id.* ¶¶ 71–72, 75–76, or "would have paid less than they did for them," *id.* ¶ 50.  More specifically, Plaintiff C.B. alleges that, while he may now be aware of kratom's addictive potential, "California Class members and members of the public who have not yet had the misfortune of trying Defendant's Products are still at risk of future harm … that cannot be remedied with monetary damages." *Id.* ¶ 77.

Plaintiffs bring a putative class action on behalf of the following three classes:

> All persons nationwide who, within the applicable statute of limitations period, up to and including the date of final judgement in this action, purchased Krave Botanicals kratom products (the "Class");

> All persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased Krave Botanicals kratom products (the "California Class");

> All persons in New York who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased Krave Botanicals kratom products (the "New York Class").

*Id.* ¶ 81.

Plaintiffs bring five causes of action, including for (1) violations of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200); (2) violations of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1770(a)(5), (7), & (9)); (3) violations of New York's Consumer Protection from Deceptive Acts and Practices Act ("NYDAPA") (N.Y. Gen. Bus. Law §§ 349, *et seq.*); (4) violations of New York False Advertising Act ("NYFAA") (*Id.* §§ 350, *et seq.*); and (5) common law fraudulent omission.  CCAC ¶¶ 91–148.

6

## II.    Procedural Background

On February 16, 2024, Plaintiffs initiated this putative class action.  ECF No. 1. On April 2, 2024, Plaintiffs filed their first amended complaint ("FAC").  ECF No. 7. On May 16, 2024, Defendant moved to dismiss the FAC.

On September 20, 2024, the Court granted Defendant's motion to dismiss in part and denied Defendant's motion to dismiss in part.  ECF No. 31; *J.J. v. Ashlynn Mktg. Grp., Inc.*, 749 F. Supp. 3d 1086 (S.D. Cal. 2024).  Specifically, the Court dismissed Plaintiffs' UCL and FAL claims without prejudice, dismissed Plaintiffs' implied warranty and unjust enrichment claims without leave to amend, and denied Defendant's motion to dismiss as to Plaintiffs' CLRA and common law fraud claims.  *J.J.*, 749 F. Supp. 3d at 1102.  The Court also declined to weigh in on choice of law issues with respect to Plaintiffs' nationwide class allegations because the parties did not provide exhaustive analyses in their briefs.  *Id.* at 1101–02.  Subsequently, Defendant filed an answer to the FAC.  ECF No. 32.

On February 18, 2025, the parties filed a joint motion to consolidate three related cases against Defendant relating to its kratom products.  ECF No. 46.  The Court granted the motion to consolidate, ECF No. 47, and Plaintiffs subsequently filed the CCAC on March 7, 2025, which is the operative complaint for purposes of this motion to dismiss. *See generally* CCAC.

## REQUEST FOR JUDICIAL NOTICE

Both parties filed unopposed requests for judicial notice of documents in the public domain, all issued by government entities or well-known and respected health organizations, regarding kratom's science and potential addictiveness.  *See* ECF No. 57-2–57-8; ECF No. 64; ECF No. 69.  Defendant also requests judicial notice of its website contents.  ECF No. 57-9.

Federal Rule of Evidence 201(b) allows courts to take judicial notice of matters that are either "generally within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b).

"Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the content of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). Moreover, courts "may take judicial notice of public documents, records, and reports of government bodies." *Bargetto v. Walgreen Co.*, No. 22-cv-02639-TLT, 2022 WL 18539360, at *2 (N.D. Cal. Dec. 19, 2022) (citing *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)). Accordingly, the Court takes judicial notice of Defendant's Exhibit 1 (ECF No. 57-3) (National Institute on Drug Abuse ("NIDA") website regarding kratom); Exhibit 2 (ECF No. 57-4) (Letter from Department of Health & Human Services ("HHS") regarding kratom); Exhibit 3 (ECF No. 57-5) (World Health Organization ("WHO") report excerpts regarding kratom); Exhibit 4 (ECF No. 57-6) (U.S. Food and Drug Administration ("FDA") pharmacologist's presentation on drug research); Exhibit 5 (ECF No. 57-7) (FDA Commissioner's statement regarding kratom); Exhibit 6 (ECF No. 57-8) (FDA website regarding kratom); and Exhibit 7 (ECF No. 69-1) (FDA website excerpts regarding import alerts);[1] and Plaintiff's Exhibit A (ECF No. 64 at 4–35[2]) (FDA Import Alert 54-15); Exhibit B (*Id.* at 36–40) (FDA Commissioner's November 14, 2017 statement regarding kratom); Exhibit C (*Id.* at 41–47) (FDA Commissioner's February 6, 2018 statement regarding kratom); and Exhibit D (*Id.* at 48–49) (Drug Enforcement Administration ("DEA") statement regarding kratom).

---

[1] Defendant erroneously lists this exhibit as "Exhibit 7," despite the fact that Exhibit 7 already exists at ECF No. 57-9.

[2] Page numbers reflect CM/ECF pagination.

*See Wyres v. Zhang*, No. 19-CV-2050-TWR (KSC), 2021 WL 3772387, at *6 n.5 (S.D. Cal. Aug. 25, 2021) (taking judicial notice of NIDA, HHS, Centers for Disease Control and Prevention, and Medical Board of California websites).  However, the Court only takes judicial notice of these documents to indicate what was in the public realm at the time, and not for the facts stated therein.  *See Von Saher*, 592 F.3d at 960.

Defendant requests that the Court incorporate Exhibit 7 (ECF No. 57-9), which is a copy of its website, by reference.  The incorporation by reference doctrine allows courts "to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  The CCAC makes various references to Defendant's website, quotes from the website, and even describes the website in some detail.  *See* CCAC ¶¶ 56–57, 59, 61.  Accordingly, because the website is referenced in the CCAC, and because Plaintiffs do not dispute the authenticity of Exhibit 7, the Court takes judicial notice of Exhibit 7.

## LEGAL STANDARDS

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Dismissal under Rule 12(b)(6) is appropriate where the complaint fails to state a cognizable legal theory or allege sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When reviewing a Rule 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Although the general rule prohibits a district court from considering evidence outside the pleadings in reviewing a motion to dismiss, it may properly consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## DISCUSSION

Defendant argues that the Court should dismiss the CCAC for several reasons. Defendant presents several threshold legal issues, including an argument that federal law preempts Plaintiffs' claims and an argument that the named Plaintiffs lack standing to bring claims arising under the laws of states other than California and New York, claims based on Defendant's website representations, or claims arising from products that they did not purchase. ECF No. 57-1 at 19–25, 35–37. Defendant further contends that it is evident at the pleadings stage that Plaintiffs cannot maintain a nationwide class. *Id.* at 29–35. Defendant also argues that Plaintiff D.F. fails to state any claim under New York law and that Plaintiff C.B. fails to state any claim under California law. *Id.* at 25–29, 37–43. The Court will first address Defendant's threshold arguments, including the nationwide class argument, then it will address the arguments that the individual named Plaintiffs fail to state a claim.

## I. Preemption

### A. Regulatory Background and Governing Law

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law

occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation and citation omitted). Here, Defendant only argues that state law conflicts with federal law. State claims that "exist solely by virtue of the [Federal Food, Drug, and Cosmetic Act ("FDCA")] ... requirements," *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001), are impliedly preempted as they "conflict[ ] with the FDCA's enforcement scheme," which entrusts enforcement to the FDA. *Perez*, 711 F.3d 9 at 1119. The Ninth Circuit has held that "§ 343-1(a)(5) preempts state-law requirements for claims about dietary supplements that differ from the FDCA's requirements." *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 848 (9th Cir. 2019).

The FDA has "limited authority under the Federal Food, Drug, and Cosmetic Act (FDCA) to regulate dietary supplements," which include botanical products.[3] *Greenberg v. Target Corp.*, 985 F.3d 650, 654 (9th Cir. 2021). Unlike with drugs, the FDA does not pre-approve product labels for dietary supplements. *Id.* However, the FDCA "requires that labels be truthful and not misleading, 21 U.S.C. § 343(r)(6)(B), and authorizes several categories of statements that can be made on the product if certain requirements are met." *Greenberg*, 985 F.3d at 654. "*Buckman* ... left the door open to state-law claims 'parallel' to federal requirements." *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015). To avoid preemption, "[t]he plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted [ ]) but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez*, 711 F.3d at 1120 (citation omitted).

"For dietary supplements, the FDCA distinguishes between 'disease claims' and 'structure/function claims' that manufacturers make about their products." *Dachauer*,

---

[3] The parties do not seem to dispute the treatment of the kratom products as a "dietary supplement."

11

913 F.3d at 846; *see also* 21 U.S.C. § 343(r)(6). A permitted structure/function claim "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a nutrient or dietary ingredient." 21 U.S.C. § 343(r)(6)(A); 21 C.F.R. § 101.93(f). On the other hand, a disease claim explicitly or implicitly claims "to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." 21 U.S.C. § 343(r)(6); 21 C.F.R. § 101.93(g). If a dietary supplement's label contains a disease claim, it "will be subject to regulation as a drug unless the claim is an authorized health claim for which the product qualifies." 21 C.F.R. § 101.93(f).

## B. Analysis

Here, Defendant observes that Plaintiffs' state claims are premised on Defendant's failure to disclose kratom's alleged addictiveness. *Id.* at 19–22. According to Defendant, the only way for it to avoid liability would be to make an unauthorized "disease claim" in contradiction of the FDCA and its regulations forbidding dietary supplemental labels that "claim to diagnose, mitigate, treat, cure or prevent" a disease. *See* 21 C.F.R. § 101.93(f)-(g). Defendant continues that, as a result, Plaintiffs' claims are impliedly preempted because it would be impossible to comply with both state consumer protection laws and the FDCA. *Id.* at 19–22. Plaintiffs responds that because "the FDA would not object to a disclosure of kratom's addictive potential," the "claims are not preempted." ECF No. 63 at 9.[4]

---

[4] Plaintiffs rely on *Wyeth v. Levine*, 555 U.S. 555, 571 (2009), to argue that "the FDCA only impliedly preempts state law claims where there is *clear evidence* the FDA would have rejected the label change." ECF No. 63 at 9. But *Wyeth* is not applicable here, as it dealt with drug regulations which permitted label changes to add warnings regarding safe use of a drug product without having to wait for FDA approval. *Wyeth*, 555 U.S. at 568–69. Here, the issues involve whether state law would require

1    Defendant argues that any claim of "addiction" or "opioid-like" characteristics

2  constitutes a "disease claim" because it relates to "damage" to a "structure of system of

3  the body such that it does not function properly."  ECF 57-1 at 21–22.  According to

4  Defendant, because only the FDA can make a determination that kratom is addictive,

5  Defendant's disclosure would be unauthorized and would violate the FDCA.  However, a

6  disclosure that a supplement has addictive qualities is not a "claim to diagnose, mitigate,

7  treat, cure, or prevent" disease.  Instead, such a disclosure informs the consumer that,

8  rather than improving one's health, kratom has exactly the opposite effect.

9    Viewing the addiction disclosure as a structure/function claim, Defendant cannot

10  persuade the Court that it is impossible to comply with both state and federal law.  It is

11  evident that the FDCA's requirements would be consistent with state law requirements.

12  The FDCA requires that structure/function claims be "truthful and not misleading."

13  *Greenberg*, 985 F.3d at 654 (citing 21 U.S.C. § 343(r)(6)(B)–(C)).  Similarly, the state

14  laws at issue here prohibit false, misleading, or deceptive business practices, such as the

15  alleged fraudulent omissions in the instant case.  *See, e.g.,* Cal. Bus. & Prof. Code §

16  17200 (prohibiting "unfair, deceptive, untrue or misleading advertising"); Cal. Civ. Code

17  § 1770(a)(5) (prohibiting representing that goods have characteristics "which they do not

18  have"); N.Y. Gen. Bus. Law § 349 (prohibiting "[d]eceptive acts or practices in the

19  conduct of any business"); *Id.* § 350 (prohibiting false advertising).  In this case, the

20  operative pleading alleges that advertisements for kratom mislead consumers by

21  espousing health benefits for kratom without disclosing the adverse effects of the

22  addictive substance.  Considering these allegations, Defendant can easily comply with

23  state laws and the FDCA by avoiding false, misleading, or deceptive statements or

24

25

26  Defendant to make impermissible "disease claims," and whether the FDCA would preempt such state
    law claims.  *Wyeth* is silent on this issue.

27                                                13

28                                                                                    24-cv-00311-GPC-MSB

omissions regarding kratom's alleged addictiveness.  *See Dachauer*, 913 F.3d at 849 (finding that both California law and the FDCA prohibit labels that omit material facts); *City & Cnty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 666 (N.D. Cal. 2020) ("There is no preemptive conflict between the City's state law claims and the FDCA, because federal law does not permit marketing schemes comprised of falsehoods and omissions to promote prescription drugs."); *see also Consumer Just. Ctr. v. Olympian Labs, Inc.*, 99 Cal. App. 4th 1056 (2002) ("In terms of FDA regulation, dietary supplements are now in a category that treats them as food, not drugs.  And foods are regularly subject to state unfair competition litigation.") (citation omitted).

Accordingly, federal law does not preempt Plaintiffs' state law claims.

## II.    Standing and Rule 23 Issues

### A. Claims Under the Laws of States Other than California and New York

#### i.   Named Plaintiffs' Standing

Defendant argues that Plaintiffs lack standing to bring its claims under the laws of states other than California and New York.  ECF No. 57-1 at 23.  Specifically, Defendant asserts that because the named Plaintiffs only reside in California or New York, and because their injuries can only be traced to the laws of California and New York, they have not established standing to bring claims under the laws of the remaining 48 states and the District of Columbia.  *Id.*  Plaintiffs respond that Defendant's argument is premature, and that the Court should instead address the question at class certification. ECF No. 63 at 10–12.

"Article III standing requires a plaintiff to have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1123 (S.D. Cal. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 (2016)).

Plaintiffs rely on the Ninth Circuit's decision in *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), in arguing that the Court should defer its decision on this issue until class certification.  In *Melendres*, the plaintiffs brought a putative class action alleging that defendants had a "'custom, policy and practice' of racially profiling Latino drivers and passengers" in violation of federal constitutional and statutory law.  *Id.* at 1258.  The defendants challenged the named plaintiffs' "standing to represent the claims of unnamed class members who were stopped, detained, or searched" outside of the so-called "saturation patrols" at issue in the named plaintiffs' circumstances.  *Id.* at 1261.  The Ninth Circuit reasoned that the defendants' argument "conflates standing and class certification," and characterized the issue as a "dissimilarity in injuries suffered."  *Id.* at 1261–62.  Thus, the Ninth Circuit distinguished between the "standing approach" and the "class certification approach":

> The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class. … The "class certification approach," on the other hand, holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met.

> *Id.* (internal quotations and citations omitted).

The Ninth Circuit "adopt[ed] the class certification approach."  *Id.* at 1262.  Under this approach, the defendants' argument regarding whether the named plaintiffs could "represent the claims of unnamed plaintiffs stopped during a non-saturation patrol" was a "question of class certification—i.e., whether the named plaintiffs are adequate representatives of the claims of the unnamed plaintiffs—not a question of standing."  *Id.*  Thus, the Court rejected the defendants' standing challenge.  *Id.* at 1264.

In the post-*Melendres* world, district courts in the Ninth Circuit are split on the question of whether named plaintiffs have standing to bring claims based on laws of

states where they do not reside or where they were not injured.  *See Mercado v. Audi of Am., LLC*, No. ED CV18-02388 JAK (SPx), 2019 WL 9051000, at *14–15 (C.D. Cal. Nov. 19, 2016) ("The Ninth Circuit has not directly addressed this question in the context of multistate claims.").  Some district courts have found that named plaintiffs only have standing to bring claims under the laws of states where they reside or were injured, and that addressing this issue at the pleading stage is appropriate because standing is a threshold issue.  *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) (collecting cases); *Stewart*, 537 F. Supp. 3d at 1124–25 (refusing to defer standing question until class certification); *Mercado*, 2019 WL 9051000, at *14–15 (same); *In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 866–67 (N.D. Cal. 2020) (same); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074–75 (N.D. Cal. 2015) (finding, pre-*Melendres*, that courts have discretion to defer standing questions until after class certification, but declining to exercise that discretion because "[t]he number of consumers from 35 other states in which state law claims are asserted is vast relative to the claims to which the named Plaintiffs have standing").

Other district courts have found that *Melendres* requires district courts to follow the "class certification approach," and have therefore deferred the inquiry until class certification, either based on an exercise of discretion, *see Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-cv-07271-JST, 2024 WL 5205539, at *9 (N.D. Cal. Dec. 23, 2024) (deferring determinations of nationwide class standing until class certification based on *Melendres*); *In re Chrysler-Dodge-Jeep Ecodiesel Litig.*, 295 F. Supp. 3d 927, 955–56 (N.D. Cal. 2018) (same); *Hamzeh v. Pharmavite LLC*, No. 24-cv-00472-HSG, 2025 WL 621891 (N.D. Cal. Feb. 26, 2025) (finding that courts have discretion to defer standing until class certification, and exercising that discretion because "Plaintiff's standing in California is uncontested and … Plaintiff seeks to represent a broader class of similarly affected consumers who may be able to raise claims under other, as yet undifferentiated

state laws"), or because the relevant inquiry is under Rule 23, not Article III standing, *see Patterson v. RW Direct, Inc.*, No. 18-cv-00055-VC, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018) (deferring standing question until class certification because "whether a named plaintiff can represent class members whose claims arise under the laws of different states does not appear to be a question of standing," as the plaintiff "does not himself seek to raise a claim under the laws of a different state; rather, he seeks to represent a class member who can raise such a claim"); *see also Sultanis v. Champion Petfoods USA Inc.*, No. 21-cv-00162-EMC, 2021 WL 3373934, at *5 (N.D. Cal. Aug. 3, 2021) ("whether a plaintiff can bring claims on behalf of unnamed plaintiffs under the laws of states in which the named plaintiff does not reside or was injured is a matter of typicality, adequacy, and predominance under Rule 23, not Article III standing").

This is an open question that the Court leaves for another day.  For the reasons *infra*, Section II.A.ii, it is evident at the pleadings stage that Plaintiffs cannot maintain a nationwide class.  Accordingly, the Court need not decide whether Plaintiffs have standing to bring claims under the laws of states other than California and New York, because the claims fail anyways.

### ii.  Nationwide Class Allegations

Defendant presents a lengthy analysis under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), arguing that common issues of law do not predominate because there are material differences across the 50 states' consumer protection laws.  *See* ECF No. 57-1 at 29–35.

While the Court admittedly deferred this question in deciding the last motion to dismiss, in part because Defendant's previous choice of law analysis was not exhaustive *see J.J.*, 749 F. Supp. 3d at 1101–02, the Court now finds that it can decide Defendant's renewed, exhaustive argument as a matter of law at the pleadings stage.  *See Frenzel v.*

*AliphCom*, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014) ("although *Mazza* was decided at class certification, the principle articulated in *Mazza* applies generally and is instructive even when deciding a motion to dismiss") (internal quotation marks and citation omitted); *Sultani*, 2021 WL 3373934, at *7 (finding at the pleadings stage that the named plaintiff could not represent unnamed class members outside of California because of "substantial variations in the consumer protection laws in the thirteen states at issue"); *see also Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) ("Plaintiff first argues that the Court should defer ruling on this issue until the class certification stage, but this argument fails to acknowledge that where the matter is sufficiently obvious from the pleadings, a court may strike class allegations.") (citations omitted); *cf. Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (concluding that motion to strike nationwide class claims at pleadings stage was not premature).

Under *Mazza*, this Court must apply California's governmental interest test. *Mazza*, 666 F.3d at 589. Under this test, the Court must: (1) determine whether California law materially differs from the laws of the other states; (2) "determine what interest, if any, each state has in having its own law applied to the case"; and (3) determine which state's interests would be "more impaired" if their laws are not applied. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919–20 (2001); *Mazza*, 666 F.3d at 590.

Here, Defendant identifies substantial differences in the consumer protection laws across the 50 states, including whether reliance is required, burdens of proof, statutes of limitations, and damages. For example:

- <u>Reliance</u>. The CLRA, UCL, and FAL require named class plaintiffs to demonstrate reliance. *See* Cal. Civ. Code § 1780(a); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (class representatives must establish reliance under the

UCL and FAL to have standing). "[S]ome other states' consumer protection statutes do not" require named plaintiffs to show reliance. *Mazza*, 666 F.3d at 591 (citing *Egwuatu v. South Lubes, Inc.,* 976 So.2d 50, 53 (Fla. Dist. Ct. App. 2008); *Dabush v. Mercedes-Benz USA, Inc.,* 874 A.2d 1110, 1121 (N.J. Super. Ct. App. Div. 2005); *Stutman v. Chem. Bank,* 731 N.E.2d 608, 611–12 (N.Y. 2000)). Further, common law fraudulent omission claims under California law allow "an inference of reliance in class actions," *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 851 (2009), while other states do not allow inferences of reliance because they require individualized proof, *see Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 474 (Del. 1991); *Humana, Inc. v. Castillo*, 728 So.2d 261 (Fla. Dist. Ct. App. 1999), and still others require actual reliance, *see Taeger v. Catholic Fam. & Cmty. Servs.*, 995 P.2d 721, 730 (Ariz. Ct. App. 1999); *Kunkle Water & Elec., Inc. v. City of Prescott*, 347 N.W.2d 648, 653 (Iowa 1984); *Gen. Motors Acceptance Corp. v. Baymon*, 732 So.2d 262, 269–70 (Miss. 1999); *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 868 (Mo. App. 2000); *Wright v. Blevins*, 705 P.2d 113, 117 (Mont. 1985); *Otto Roth & Co., Inc. v. Gourmet Pasta, Inc.*, 715 N.Y.S.2d 78, 80 (N.Y. App. Div. 2000); *Whitson v. Okla. Farmers Union Mut. Ins. Co.*, 889 P.2d 285, 287 (Okla. 1995); *Spence v. Griffin*, 372 S.E.2d 595, 598 (Va. 1988); *Johnson v. Soulis*, 542 P.2d 867, 872 (Wyo. 1975).

- Burden of proof. California's burden of proof for fraud claims is a preponderance of the evidence, *Liodas v. Sahadi*, 19 Cal. 3d 278, 291 (1977), while "most states demand clear and convincing evidence." *Darisse*, 2016 WL 4385849, at *13 (collecting cases); *see also* ECF No. 57-1, Appendix A.

- Statutes of limitations. California, Illinois, and Washington have a three-year statute of limitations for consumer protection claims. Cal. Civ. Code § 1783;

19

815 Ill. Comp. Stat. 505/10a(e); *Shepard v. Holmes*, 345 P.3d 786, 789 (Wash. Ct. App. 2014).  Florida and Massachusetts have four-year statutes of limitations, Fla. Stat. Ann. § 95.11(3)(f); Mass. Gen. Laws ch. 260, § 5A., Missouri has a five-year statute of limitations, Mo. Ann. Stat. § 516.120, and Michigan, Minnesota, and New Jersey have six-year statutes of limitations, Mich. Comp. Laws Ann. § 445.911(7); Minn. Stat. § 541.05(1)–(2); N.J. Stat. Ann. § 2A:14-1.  "To complicate matters further, Florida, Minnesota, and New York do not appear to recognize or limit the application of the discovery rule.  *See, e.g.*, *Veldhuizen v. A.O. Smith Corp.*, 839 F. Supp. 669, 674 (D. Minn. 1993)."  *Sultanis*, 2021 WL 3373934, at *7.

- <u>Damages</u>.  In California, fraud plaintiffs may recover both out-of-pocket damages and benefit-of-the-bargain damages.  *Lazar v. Superior Court*, 12 Cal. 4th 631, 646 (1996).  However, Arizona, Delaware, Kentucky, New York, and other states only permit plaintiffs to recover out-of-pocket damages, *Standard Chartered PLC v. Price Waterhouse*, 945 P. 2d 317, 345 (Ariz. Ct. App. 1996); *LCT Cap., LLC v. NGL Energy Partners LP*, 249 A. 3d 77, 90–97 (Del. 2021); *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 59 (Ky. 2018); *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996); *see also* ECF No. 57-1, Appendix A, while Kansas, New Jersey, South Carolina, and other states only permit benefit-of-the-bargain damages, *Fisher v. Mr. Harold's Hair Lab, Inc.*, 527 P.2d 1026, 1036 (Kan. 1974); *Finderne Mgmt. Co., Inc. v. Barrett*, 955 A.2d 940, 957 (N.J. Super. Ct. App. Div. 2008); *Schnellmann v. Roettger*, 645 S.E.2d 239, 241 (S.C. 2007); *see also* ECF No. 57-1, Appendix A.

These differences are clearly material, as they directly impact whether certain class members are entitled to recovery and how much they are entitled to recover.  Plaintiffs do

not meaningfully oppose Defendant's analysis, and instead ask the Court to revisit the issue at class certification.  While the Court was previously willing to defer the issue because of the lack of briefing, Defendant provided an exhaustive analysis on the issues in the instant motion to dismiss.  And Plaintiffs had a meaningful opportunity to respond to these arguments in their opposition.  Plaintiffs' failure to engage with Defendant's analysis is telling.

The Court finds little trouble concluding that the second and third prongs weigh against Plaintiffs' ability to maintain a nationwide class.  Regarding the second prong, "all 50 states have an interest in having their own laws applied to the consumer transactions that took place within their borders, and those laws have significant conflicts." *Darisse*, 2016 WL 4385849, at *14; *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1125 (C.D. Cal. 2020) ("each of the states at issue here has predominant interests in having their laws applied to vehicle purchases that occurred within their borders").  And regarding the third prong, "foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state," while "California's interest in applying its law to residents of foreign states is attenuated." *Mazza*, 666 F.3d at 594; *see also Mosqueda*, 443 F. Supp. 3d at 1125 ("the place of the wrong has the predominant interest").

Accordingly, the Court finds that "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *Mazza*, 666 F.3d at 596.  Because this is evident at the pleadings stage, the Court sees no need to subject Defendant to extensive and burdensome discovery on nationwide class issues.  To this end, the Court GRANTS Defendant's motion to dismiss Plaintiffs' nationwide class claims and STRIKES Plaintiffs' nationwide class allegations.

/ / /

**B. Standing to Bring Claims Based on Website Representations**

Defendant also argues that the named Plaintiffs lack standing "to bring claims based on [website] representations that they did not see or rely on." ECF No. 57-1 at 24–25.[5]  As Plaintiffs clearly state in their opposition, "Plaintiffs do not allege reliance on Defendant's website representations; rather, they seek to represent a class of consumers who purchased the same products, whether in-store or online."  ECF No. 63 at 13. Defendant subsequently abandons this theory in its reply brief and instead focuses on whether Plaintiffs have standing to bring claims based on products that they did not purchase.  *See* ECF No. 68 at 14–15.  Accordingly, because Plaintiffs' claims do not hinge on their reliance on website representations, the Court DENIES Defendant's motion to dismiss on these grounds.

**C. Standing to Bring Claims Regarding Products Plaintiffs Did Not Purchase**

There is no controlling authority in the Ninth Circuit on whether plaintiffs in a class action lawsuit have standing for products they did not purchase.  *Anderberg v. Hain Celestial Grp., Inc.*, 652 F. Supp. 3d 1232, 1240 (S.D. Cal. 2023); *Renn v. Otay Lakes Brewery, LLC*, 23-cv-01139-GPC(BLM), 2023 WL 6050582, at *3 (S.D. Cal. Sept. 14, 2023).  Some courts have held that plaintiffs lack standing to assert claims for products they did not purchase.  *See, e.g., Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) (finding no standing to bring claims for products plaintiff did not purchase); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal.

---

[5] In this section of its motion, Defendant conflates two related questions: (1) whether Plaintiffs have standing to bring claims based on Defendant's website representations, and (2) whether Plaintiffs have standing to bring claims for products they purchased on Defendant's website.  *See* ECF No. 57-1 at 24–25.  Defendant makes a standing argument as to products the named Plaintiffs did not purchase regardless, so the Court will simply address these questions separately. *Compare id.* at 24–25 *with id.* at 35–37.

24-cv-00311-GPC-MSB

July 11, 2012) (same).  But "[t]he prevailing view in the Ninth Circuit is to allow class action plaintiffs to bring claims for products they did not purchase as long as the products and alleged misrepresentations are substantially similar." *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1011 (S.D. Cal. 2021); *Renn*, 2023 WL 6050582, at *3 (applying "substantially similar" test); *Brown v. Food for Life Baking Co., Inc.*, 658 F. Supp. 3d 732 (N.D. Cal. 2023) (same); *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 728–29 (same).  Indeed, this Court has applied the substantially similar test in the past, *Corbett*, 544 F. Supp. 3d at 1011; *Renn*, 2023 WL 6050582, at *3, and sees no reason to stray from this approach here.[6]

Here, at the pleading stage, Plaintiffs have adequately alleged that all of Defendant's kratom products are substantially similar.  This Court's decision in *Corbett* is instructive.  There, this Court found the products at issue to be substantially similar because they all contained the same relevant ingredient, elderberry, but came in different forms, such as "syrup, gummies, capsules, tablets, lozenges, powder, and drops." *Corbett*, 544 F. Supp. 3d at 1012.  Further, the plaintiffs in *Corbett* alleged uniformity in the packaging and marketing of the products.  *Id.*  Similarly, here, Plaintiffs bring claims regarding Defendant's kratom powder, capsule, and liquid extract products, which all contain kratom derived from the plant's dried leaves.  Compl. ¶ 1.  Each of the kratom products therefore contains the same active alkaloids, which "are similar to opioids." *Id.* Plaintiffs allege that the image in the CCAC is representative of the packaging on all the kratom products at issue.  *See id.* ¶¶ 60, 62–63.  Plaintiffs further allege that Defendant marketed all the kratom products similarly and that each kratom products' packaging fails

---

[6] Further, Defendant does not contend that the "substantially similar" test should not apply here.  In fact, it applies the test in its motion.  ECF No. 57-1 at 35–36.

to disclose kratom's addictiveness. *Id.* ¶ 67. Like in *Corbett*, these allegations are sufficient to allege that all the kratom products are substantially similar.

The cases Defendant relies on are easily distinguishable. First, Defendant cites *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2014 WL 1048640, at *6 (N.D. Cal. Mar. 14, 2014), where the court found insufficient allegations of substantial similarity where the products at issue involved different packaging representations and the complaint "lack[ed] specificity as to what exact undisclosed additives are in the unpurchased products." Defendant also relies on *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1141–42 (N.D. Cal. 2013), where the plaintiff flatly neglected to allege any similarity among the products. Instead, the plaintiff listed products, appended the list to the complaint, and merely asserted in a conclusory fashion that they "are all basically the same." *Id.* at 1141. Here, on the other hand, Plaintiffs clearly allege that kratom is in each of the unpurchased products and that the products contain substantially similar labels. Thus, Plaintiffs provide much more specificity than the plaintiffs did in *Gitson* and *Wilson*.

Accordingly, the Court finds that Plaintiffs have sufficiently alleged that the unpurchased products are substantially similar. Therefore, the named Plaintiffs have standing to bring the claims based on injuries caused by products that they did not purchase. To the extent that Defendant wishes to further challenge the kratom products' similarity under Rule 23 following discovery, it may bring such arguments at class certification.

### III.    Plaintiff D.F.'s New York Law Claims

#### A. NYDAPA and NYFAA Claims

The NYDAPA prohibits "deceptive acts or practices in the conduct of any business, trade or commerce," N.Y. Gen Bus. Law § 349, and the NYFAA prohibits "false advertising," *id.* § 350. "The standard for recovery under [the NYFAA], while

specific to false advertising, is otherwise identical to [the NYDAPA]." *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 529 (S.D.N.Y. 2018); *see also Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 359 (E.D.N.Y. 2022) (because the standards are "'substantively identical'…, Second Circuit courts merge analysis of the two claims"). "To state claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Kyszenia*, 583 F. Supp. 3d at 359 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).

Here, Defendant argues that Plaintiff D.F.'s claims fail as a matter of law because he does not sufficiently allege a fraudulent omission to show that Defendant's conduct was materially misleading. A plaintiff bringing a fraudulent omission claim must show either that (1) "the business alone possessed the relevant information," or (2) "a consumer could not reasonably obtain the information." *Id.* at 360. Although this inquiry may be decided as a matter of law, *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), it "is generally a question of fact not suited for resolution at the motion to dismiss stage." *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 218 (N.D.N.Y. 2023) (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (collecting cases)).

Defendant primarily argues that Plaintiff D.F. does not allege that Defendant alone possessed information about kratom's alleged addictiveness. The relevant inquiry is whether the information was *solely* in Defendant's possession. *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003). Plaintiff D.F.'s own allegations clearly support Defendant's argument. Plaintiff D.F. alleges that health professionals are familiar with kratom's similarities to opioids, CCAC ¶ 29, that there are public internet forum discussions regarding kratom's addictive qualities, *id.* ¶¶ 43–34, and that there are "widespread reports and studies" regarding kratom's addictiveness, *id.* ¶ 58. Moreover,

the studies Defendant has introduced make clear that government agencies and health organizations have investigated kratom's addictive potential.  *See* ECF Nos. 57-2–57-8. In all, these facts make it clear that Defendant did not have *exclusive* knowledge of kratom's addictiveness under New York law.

But this is "not fatal to the plaintiffs' claims," because "an omission can still be actionable where it is shown that a consumer could not reasonably obtain the omitted information."  *Kyszenia*, 583 F. Supp. 3d at 360 (internal quotation marks and citations omitted).  Plaintiff D.F. relies on *Kyszenia* to argue that "scattered public discussion" on kratom's addictiveness does not bar its claims because the "selective online materials or niche federally funded studies" are not "reasonably accessible or comprehensible to consumers."  ECF No. 63 at 13–14.  Plaintiff D.F. alleges that "[t]he general public is largely unaware of kratom and its addictive potential," CCAC ¶ 2, that kratom is marketed as providing benefits without disclosure of its addictive potential, *id.* ¶ 41, and, most importantly, "that consumers are not aware of the risks of kratom consumption before making their purchases because the available information is either difficult to access or, as with the medical literature, incomprehensible to the average person," *Id.* ¶ 48.  These allegations are sufficient to show, at the pleadings stage, that consumers cannot reasonably obtain information about kratom's addictive potential before purchasing Defendant's kratom products.  *See Kyszenia*, 583 F. Supp. 3d at 360 ("The fact that there were complaints about the aperture issue on a handful of websites does not show that consumers were entirely capable of discovering the information on their own."); *cf. In re Hain Celestial Heavy Metals Baby Food Litig.*, No. 21-cv-00678 (NRM) (AYS), 2024 WL 5239510, at *16 (E.D.N.Y. Dec. 27, 2024) ("although Plaintiffs have access to some data … on the levels of heavy metals found in some of Hain's ingredients and/or products, the Court agrees that it would be an undue and inappropriate burden to

require them to have obtained test results for all of Hain's finished products at the time of purchase).

Defendant relies on two cases—*Dimond* and *Paradowski*—to argue that Plaintiff D.F., the unnamed class members, and Defendant "have access to the same public information regarding kratom." ECF No. 57-1 at 27 (citing *Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244(KPF), 2014 WL 3377105 (S.D.N.Y. July 9, 2014) and *Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962-cv, 2023 WL 3829559 (2d Cir. June 6, 2023)). In *Dimond*, however, the court clearly found a lack of allegations to demonstrate that the plaintiff could not reasonably obtain the unlisted beverage prices at issue, as he could have just inquired at the restaurant. 2014 WL 3377105, at *14. Here, to the contrary, there are ample allegations regarding the difficulty of obtaining comprehensible information about kratom's addictiveness, and it is implausible for consumers to inquire when they are often purchasing from third parties or online.

In *Paradowski*, the court found that the record was clear that nearly all pet food contains heavy metals, and that the products at issue clearly listed fish ingredients, which public studies show contain heavy metals. 2023 WL 3829559, at *3. Further, regulators have published guidelines regarding the acceptable levels of heavy metals in dog foods since 2005, which demonstrates public awareness. *Id.* The instant case is distinct for two reasons. First, the presence of heavy metals in seafood is much more widely known than the addictive potential of kratom. Second, in *Paradowski*, there were regulatory guidelines dating back nearly 20 years on heavy metals in dog food; here, to the contrary, the FDA is still undecided on regulation, CCAC ¶ 16 n.1, and "misinformation about kratom is rampant," *id.* ¶ 58. Thus, *Paradowski* is inapposite.

The Court finds that Plaintiff D.F. has sufficiently alleged a fraudulent omission under New York law. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' NYDAPA and NYFAA Claims.

## B. New York Fraudulent Omission Claim

To state a claim for fraudulent omission under New York law, a complaint must allege "(1) failure to discharge a duty to disclose; (2) an intention to defraud, or scienter; (3) reliance; and (4) damages." *TVT Recs. V. Island Def Jam Music Grp.*, 412 F.3d 82, 90–91 (2d Cir. 2005).

Defendant argues that Plaintiff D.F.'s common law fraudulent omission claim fails because Defendant had no duty to disclose under New York law. ECF No. 57-1 at 27–29. A "duty to disclose arises where a party, with a duty to be complete, has made only a partial or ambiguous statement, or where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Id.* at 91 (internal quotation marks and citations omitted).

Plaintiff D.F. does not contest Defendant's argument that Defendant did not owe Plaintiff D.F. a fiduciary duty or make any partial or ambiguous statement. Instead, the parties dispute whether Defendant possessed superior knowledge which was not readily available to Plaintiff D.F. and whether Defendant knew that Plaintiff D.F. was acting on the basis of mistaken knowledge. Plaintiff D.F. alleges that "as a kratom product manufacturer and distributor, Defendant occupied a position of superior knowledge to the average reasonable consumer, who likely knows next to nothing about kratom." CCAC ¶ 66. Plaintiff D.F. further alleges upon information and belief that "Defendant has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it," *id.* ¶ 53, and that "Defendant has received numerous user reports about the addictive potential of kratom[.]" *id.* ¶ 54. As the Court previously found, these allegations are sufficient to plead that Defendant possessed superior knowledge. *See J.J.*, 749 F. Supp. 3d at 1099–1100.

Defendant, citing *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100–01 (S.D.N.Y. 1997), reasserts its argument that "[m]atters of public record are not 'peculiarly' within

the Defendant's knowledge and can be uncovered with due diligence." ECF No. 57-1 at 28–29. But in *Weaver*, the plaintiff alleged that the defendant itself "advertised and publicly disseminated false and misleading information about the safety and quality of its vehicles." 172 F.R.D. at 101. Here, to the contrary, Defendant has not publicly advertised any information about kratom's potential addictiveness or lack thereof. Instead, Defendant has been silent on the issue. This forms the very basis of Plaintiff D.F.'s fraudulent omission claim.

Moreover, the Court's above reasoning regarding Plaintiff D.F.'s inability to reasonably obtain information regarding kratom's addictiveness, *supra* Section III.A, is applicable here. Specifically, the inaccessibility and complex nature of the available literature on kratom makes it immaterial that some studies on kratom's addictiveness were publicly available. In fact, as Plaintiffs allege, "misinformation about kratom is rampant," CCAC ¶ 58, which makes it plausible that Defendant held superior knowledge to Plaintiff D.F. and knew that Plaintiff D.F. was acting on the basis of mistaken knowledge.

Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff D.F.'s common law fraudulent omission claim under New York law because Plaintiff D.F. adequately pleads that Defendant owed him a duty to disclose.

## IV.    Plaintiff C.B.'s California Law Claims

### A. Exclusive Knowledge

To plausibly allege a fraudulent omission under California law, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018)).

1    A defendant "has a duty to disclose when either (1) the defect at issue relates to an

2    unreasonable safety hazard or (2) the defect is material, 'central to the product's

3    function,' and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling v.*

4    *Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (citation omitted) (emphasis

5    added). "The *LiMandri* factors are: (1) the defendant is in a fiduciary relationship with

6    the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to

7    the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4)

8    the defendant makes partial representations but also suppresses some material facts." *Id.*

9    (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

10    Defendant argues that Plaintiff C.B. fails to state claims under the UCL, CLRA,

11    and for common law fraudulent omission under California law because Plaintiff C.B.

12    fails to allege that Defendant had a duty to disclose its kratom products' potential

13    addictiveness. ECF No. 57-1 at 37–41. More specifically, Defendant challenges whether

14    it "had exclusive or superior knowledge about kratom's alleged addictiveness." ECF No.

15    57-1 at 37–41.

16    As both parties acknowledge, the Court previously denied Defendant's argument,

17    finding that Plaintiffs plausibly alleged that Defendant had exclusive or superior

18    knowledge under California law. *See J.J.*, 749 F. Supp. 3d at 1099–1100 (finding that

19    Defendant had exclusive or superior knowledge of kratom's addictiveness despite the

20    existence of publicly available studies on the topic, because medical literature was

21    inaccessible to Plaintiffs and more accessible information was "littered with

22    misinformation about kratom").

23    Defendant, however, renews this argument because it believes that the information

24    it requested the Court take judicial notice of "shows that Plaintiffs' theory is not plausible

25    as to [Plaintiff] C.B." ECF No. 57-1 at 38. That is not so. Instead, Defendant's

26    proffered documents reinforce the Court's previous decision. Several of these documents

27

28

indicate that government agencies and health organizations are either undecided or have arrived at conflicting conclusions regarding kratom's addictive potential.  *See* ECF No. 57-3 at 9 (NIH noting that "[s]tudies suggest people may experience mild to moderate withdrawal symptoms when they stop regular kratom use, but more research is needed to understand to what extent people develop substance use disorder symptoms related to kratom"); ECF No. 57-4 at 4 (Department of Health and Human Services letter stating that "[f]urther analysis and public input regarding *kratom* … are needed before any scheduling should be undertaken."); ECF No. 57-5 at 15 (World Health Organization observing evidence of kratom's dependence potential, but finding "insufficient evidence to recommend a critical review of kratom"); ECF No. 57-6 at 38 (2024 FDA presentation concluding that "kratom appeared to be well-tolerated"); ECF No. 57-7 at 5 (2018 FDA statement referring to kratom as an "opioid" and that "[t]here is no evidence to indicate that kratom is safe or effective for any medical use"); ECF No. 57-8 at 2 (undated FDA document stating that "[t]o date, a well-designed human abuse potential study has not been conducted that would show whether kratom … produce[s] rewarding effects (such as feeling 'high') that might lead an individual to abuse kratom.  This means that the abuse potential of kratom has yet to be fully understood.").  With such conflicting information about kratom in the public sphere, and many of these documents referencing complex studies or taking the form of difficult-to-access reports and letters, it is plausible that Defendant, the manufacturer of the products, had superior knowledge compared to the average consumer.  *See Ottesen*, 2024 WL 5205539, at *12 ("given that the alleged defect cannot be discoverable from mere inspection and involves scientifically complex classifications, the FDA's publications do not change the fact that Hi-Tech has 'superior knowledge' compared to Ottesen regarding the omitted safety information"); *see also In re JUUL Labs, Inc., Mktg., Sales Pracs., and Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 628–29 (N.D. Cal. 2020) (finding that, even though information "was publicly available

to plaintiffs through studies and news articles[,] . . . plaintiffs plausibly allege[d] that [defendant] had exclusive and superior knowledge of specific and undisclosed or not adequately disclosed information").

Defendant's argument that its kratom products' labels directed Plaintiff C.B. to consult with his doctor before use, who in turn would have informed Plaintiff C.B. of kratom's addictiveness, has no bearing on whether Defendant had a duty to disclose. Defendant cannot simply place the onus of warning consumers of the potential adverse effects of its kratom products on consumers' doctors by adding boilerplate language to its labels. And it cites no case law standing for the proposition that such language on a label exonerates it from its duty to disclose. Accordingly, the Court is unpersuaded by this argument.

Defendant also argues that the documents subject to judicial notice show that Plaintiff C.B.'s allegations regarding whether kratom is addictive at all are conclusory. But the allegations are far from conclusory. Plaintiff C.B. details her addiction to kratom and excruciating withdrawal symptoms in the CCAC. Plaintiff C.B. "experiences symptoms of irritability, nausea, opioid-like withdrawals, malaise, lack of energy, and severe brain fog" each time she tries to quit, and, because of the severity of the withdrawal symptoms, she has been unable to quit. CCAC ¶¶ 73–75. Moreover, some of Defendant's proffered documents conclude that kratom does have addictive potential. *See* ECF No. 57-3 at 9 (NIH noting that "[s]tudies suggest people may experience mild to moderate withdrawal symptoms when they stop regular kratom use"); ECF No. 57-5 at 15 (World Health Organization observing evidence of kratom's dependence potential). At this stage, the Court finds that Plaintiff C.B. has adequately alleged that kratom is addictive.

Accordingly, the Court concludes that Plaintiff C.B. has adequately alleged that Defendant has a duty to disclose its kratom products' addictive potential. Therefore, the

1    Court DENIES Defendant's motion to dismiss Plaintiff C.B.'s UCL, CLRA, and

2    fraudulent omission claims on these grounds.

3        **B. Equitable Relief Under the UCL**

4        To maintain a claim for equitable restitution under the UCL, a plaintiff must allege

5    that they lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d

6    834, 844 (9th Cir. 2020).

7        The Court previously granted Defendant's motion to dismiss Plaintiffs' UCL

8    claims without prejudice, as Plaintiffs conceded that they did not adequately plead that

9    they lacked an adequate remedy at law. *See J.J.*, 749 F. Supp. 3d at 1100–01.[7] Now,

10   however, Plaintiff C.B. alleges a risk of future harm to the public that Defendant cannot

11   adequately redress with monetary damages. *See* CCAC ¶ 77; ECF No. 63 at 19.

12       "[P]ublic injunctive relief [is] a remedy available to private plaintiffs under the

13   UCL[.]" *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017); *Battle v. Taylor James,*

14   *LLC*, 607 F. Supp. 3d 1025, 1052 (C.D. Cal. 2022) (citation omitted). Notwithstanding

15   this, UCL plaintiffs seeking public injunctive relief must still plead that monetary

16   remedies are inadequate under *Sonner*. *See Battle*, 607 F. Supp. 3d at 1053 (finding that

17   plaintiff did not plausibly allege "that monetary relief would be inadequate"). The Court

18   will address Plaintiff C.B.'s new allegations with these principles in mind.

19       Specifically, Plaintiff C.B. alleges that, while he may now be aware of kratom's

20   addictive potential, "California Class members and members of the public who have not

21   yet had the misfortune of trying Defendant's Products are still at risk of future harm …

22   that cannot be remedied with monetary damages." CCAC ¶ 77. Plaintiff C.B. thus seeks

23

24   _____

25   [7] While Plaintiffs alluded to refiling their equitable claims in state court, *see J.J.*, 749 F. Supp. 3d at
     1100, that did not prevent Plaintiff C.B., who was not previously a named plaintiff, from renewing the
26   UCL claim in this case with allegations that legal remedies are inadequate. Moreover, Defendant does
     not specifically challenge the propriety of Plaintiff C.B.'s additional allegations.

27

28                                                                    24-cv-00311-GPC-MSB

"injunctive relief to prevent future harm—not just to Plaintiffs, but to the broader public." ECF No. 63 at 19 (citing CCAC ¶ 77). These allegations are sufficient at this stage to adequately plead that Plaintiff C.B. lacks an adequate remedy at law to subdue the risk of future harm to the public. *See Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF (PJWx), 2021 WL 9839349, at *5 (C.D. Cal. Mar. 10, 2021) (finding an inadequate remedy at law where the equitable relief sought "revolves around the prevention of physical injury to current and future drivers and passengers of Honda vehicles," and such "public safety benefits … could not be replicated through an award of monetary damages"); *see also Nutrition Distrib. LLC v. IronMag Labs, LLC*, No. CV 15-8233-R, 2018 WL 6264986, at *4 (C.D. Cal. Nov. 16, 2018) (finding that plaintiff "demonstrated a likelihood of future injury if Defendants are permitted to continue selling Ostarine products with deceptive advertising").

Notably, Defendant largely abandons its arguments on reply, and instead argues that Plaintiffs' request for an injunction mandating warnings on its kratom products' labels further supports Defendant's argument that federal law preempts Plaintiffs' claims. ECF No. 68 at 20. However, the Court already rejected Defendant's preemption arguments, *supra* Section I. Thus, the Court easily disposes of this rebuttal.

For the above reasons, the Court DENIES Defendant's motion to dismiss Plaintiff C.B.'s UCL claim.

# I.    LEAVE TO AMEND

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,*

806 F.2d at 1401.  Here, the Court is only granting Defendant's motion to dismiss as to Plaintiffs' nationwide class allegations.  The Court found that Plaintiffs cannot sustain a nationwide class because common issues of law do not predominate due to significant variances in the 50 states' consumer protection and fraudulent omission laws.  Plaintiffs cannot plead around this shortcoming.  Accordingly, the Court DENIES Plaintiffs leave to amend the CCAC.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss Plaintiffs' nationwide class claims without leave to amend and STRIKES Plaintiffs' nationwide class allegations.  The Court DENIES Defendant's motion to dismiss on all other grounds.

**IT IS SO ORDERED.**

Dated:  July 1, 2025

Hon. Gonzalo P. Curiel
United States District Judge

24-cv-00311-GPC-MSB