UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.J., C.D., C.B., and D.F., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASHLYNN MARKETING GROUP, INC.,<br><br>Defendant. | Case No.: 3:24-cv-00311-GPC-MSB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>**[ECF No. 84]** |

This case concerns Defendant's alleged failure to warn consumers of the purportedly addictive nature of kratom when marketing and labeling its kratom-based products. On July 1, 2025, this Court issued an order granting in part and denying in part Defendant Ashlynn Marketing Group, Inc.'s second motion to dismiss. ECF No. 77. Currently before the Court is Defendant's motion for reconsideration. ECF No. 84. The motion has been fully briefed. ECF Nos. 90, 94. The matter was scheduled for a hearing on October 17, 2025. The Court vacates the hearing and, for the reasons discussed below, DENIES Defendant's motion for reconsideration.

/ / /

## BACKGROUND

The factual and procedural background of this case is outlined in this Court's July 1, 2025, order granting in part and denying in part Defendant's motion to dismiss. ECF No. 77. Accordingly, the Court will address only those facts relevant to the motion currently before the Court.

On March 7, 2025, Plaintiffs J.J., C.D., C.B., and D.F. filed their Consolidated Class Action Complaint (CCAC), individually and on behalf of three putative classes, alleging that Defendant failed to warn consumers of the potentially addictive nature of its products, which contain dried leaves from a plant called kratom. ECF No. 50. Specifically, Plaintiffs allege that Defendant misled consumers by espousing the purported health benefits of kratom without disclosing kratom's addictive properties on its product labels or in its advertising. *Id.* at 8, 16. Plaintiffs' CCAC alleges violations of (1) California's Unfair Competition Law; (2) California's Consumers Legal Remedies Act; (3) New York's Consumer Protection from Deceptive Acts and Practices Act; and (4) New York's False Advertising Act. ECF No. 50, at 25-33. The CCAC also includes a count of common law fraudulent omission. *Id* at 33-34.

Defendant moved to dismiss Plaintiffs' CCAC on April 7, 2025. ECF No. 57. In its motion to dismiss, Defendant argued, among other things, that Plaintiffs' claims must be dismissed on the grounds that they are preempted by federal law. ECF No. 57-1, at 19.[1] Specifically, Defendant noted that Plaintiffs' state law claims were premised on Defendant's failure to disclose kratom's alleged addictiveness. However, Defendant claimed that labeling its products with any such warning would run afoul of the Federal Food, Drugs, and Cosmetic Act (FDCA). *See* ECF No. 57-1, at 21; ECF No. 68, at 7.

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

According to Defendant, the relevant state law, which allegedly compels Defendants to warn consumers of potential addictive properties, conflicts with federal law, which purportedly prohibits Defendant from providing such a warning absent FDA approval. Given the conflict, Defendant claims that Plaintiffs' state law claims are preempted and must be dismissed. ECF No. 57-1, at 22; ECF No. 68, at 7.

The Court concluded that attaching a warning that kratom is addictive would not violate the FDCA's labeling regulations for dietary supplements. ECF No. 77, at 13-14. Further, the Court found that Defendant could comply with both state and federal law, and Plaintiffs' claims were not preempted. *Id.* Accordingly, on July 1, 2025, the Court granted in part and denied in part Defendant's motion. *Id.* at 35. The Court granted Defendant's motion to dismiss only as to Plaintiffs' nationwide class claims. *Id.* at 17-21. The Court denied Defendant's motion on all other grounds. *Id.* at 35.

Defendant now moves for reconsideration on the grounds that the Court made a clear legal error by finding that federal law does not preempt Plaintiffs' state law claims. ECF No. 84-1, at 2. Plaintiffs filed a response in opposition to Defendant's motion on August 29, 2025, ECF No. 90, to which Defendant replied on September 19, 2025, ECF No. 94.

## LEGAL STANDARD

Defendant raises its motion for reconsideration under Federal Rule of Civil Procedure 60(b) and this district's Local Civil Rule 7.1(i)(1). ECF No. 84-1, at 4. Because the Court's order on Defendant's motion to dismiss did not terminate the case, Defendant's current motion is better suited to proceed under Rule 54(b)—which provides that any order that does not terminate a case may be revised at any time prior to final judgment—than Rule 60(b)—which refers to final judgments. *See*, *e.g.*, *Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11-CV-2389-GPC-WVG, 2014 WL 6980248, at *1 (S.D. Cal. Dec. 9, 2014) ("A motion for reconsideration may be brought under Rule 54(b) which

provides that any order which does not terminate the case is subject to revision at any time before the entry of judgment.").

However, under either Rule 54(b) or Rule 60(b), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993) (addressing a motion for reconsideration under Rule 60(b) and Rule 59(e)). *See also Fay Ave. Props., LLC*, 2014 WL 6980248, at *1 (applying the same standard to a motion for reconsideration under Rule 54(b)); *Sherman v. Yahoo! Inc*., 997 F. Supp. 2d 1129, 1139 (S.D. Cal. 2014) (same). Of relevance here, clear error occurs when "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark County School Dist.,* 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).

In the Southern District of California, motions for reconsideration are also governed by Local Rule 7.1(i), under which a party may apply for reconsideration "[w]henever any motion . . . has been made to any judge and has been refused in whole or in part[.]" S.D. Cal. Civ. L.R. 7.1(i)(1). Local Rule 7.1(i) requires that a party seeking reconsideration include an affidavit or certified statement of a party or attorney identifying, among other things, "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." *Id.*

"Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Sherman*, 997 F. Supp. 2d at 1139 (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000)). "A motion for reconsideration is not an opportunity to renew arguments considered and rejected by the court, nor is it an opportunity for a party to re-argue a motion because it is dissatisfied with the original outcome." *Id.* (quoting *FTC v. Neovi, Inc*., 2009 WL 56130,

at *2 (S.D. Cal. Jan. 7, 2009)). Ultimately, whether to grant or deny a motion for reconsideration lies within the Court's sound discretion. *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation,* 331 F.3d 1041, 1046 (9th Cir. 2003).

## DISCUSSION

Defendant's motion for reconsideration contends that the Court committed a clear error in declining to find that Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act (FDCA). Defendant does not assert any intervening change in law, new evidence, or changed circumstances. Instead, Defendant largely reiterates the same "impossibility" arguments it made previously regarding an alleged conflict between state and federal law. ECF No. 57-1, at 19-22; ECF No. 84-1, 9-10. Distilled to its essence, Defendant contends that "a disclosure stating that kratom is 'addictive' constitutes an impermissible disease claim" under the FDCA. ECF No. 84-1, at 5. The Court notes that arguments that have already been considered and rejected by the Court are not an appropriate basis for a motion for reconsideration. *See Sherman*, 997 F. Supp. 2d at 1139. However, the Court will consider Defendant's arguments, as they invite a more nuanced assessment of the statutory language than the Court provided in its prior opinion.

In previously denying Defendant's motion to dismiss on the issue of preemption, the Court concluded that an addiction disclosure is not a disease claim as defined by federal statute, ECF No. 77, at 13—a determination Defendant now challenges as clear error, ECF No. 84-1, at 2. Specifically, Defendant argues that, in finding that an addiction disclosure is not a disease claim, the Court failed to consider the relevant statutory and regulatory authority.[2] *Id.* at 5. Having revisited the relevant authority, the Court finds that there was

---

[2] To "aid the Court's reconsideration," Defendant has made an unopposed request for judicial notice of documents in the public domain, all issued by government entities or well-known and respected health organizations. ECF No. 84-1, at 4. The documents discuss the differentiation of structure/function and disease claims, and the classification

no error in determining that an addiction disclosure is not a disease claim as contemplated by the FDCA.

## I. Federal Preemption

A presumption against preemption exists because the "historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 108 (2000) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In the area of proper marketing and labeling of food products, the presumption against preemption is strong. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013); *see also Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019) ("[T]he FDCA classifies dietary supplements as food[.]").

The U.S. Supreme Court has also recognized that "[i]mpossibility pre-emption is a demanding defense," *Wyeth v. Levine*, 555 U.S. 555, 573 (2009), and has identified two cornerstones of pre-emption jurisprudence:

> First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996) (internal quotation marks omitted); *see Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103 (1963). Second, "[i]n all pre-

---

of addiction is a disease. *Id.* Federal Rule of Evidence 201(b) allows courts to take judicial notice of matters that are either "generally within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b).

"Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the content of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). Moreover, courts "may take judicial notice of public documents, records, and reports of government bodies." *Bargetto v. Walgreen Co.*, No. 22-cv-02639-TLT, 2022 WL 18539360, at *2 (N.D. Cal. Dec. 19, 2022) (citing *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)). Accordingly, the Court takes judicial notice of Defendant's Exhibits 1-4.

   emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Lohr,* 518 U.S., at 485 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

*Id. at* 565 (alterations in original).

  In *Wyeth,* the plaintiff contended that a drug manufacturer had breached a state tort-law duty to provide an adequate warning label. 555 U.S., at 559–560. The Court held that the lawsuit was not preempted because it was possible for Wyeth, a brand-name drug manufacturer, to comply with both state and federal law. *Id.,* at 572–573. Here, the question posed is whether it is possible for Defendant to comply with a state law duty to warn and federal law. Focusing on the purpose of the FDCA, the answer is yes.

### A. The Purpose of the FDCA.

  The FDCA governs what claims manufacturers of dietary supplements may make about their products. 21 U.S.C. § 343(r)(6). As the Ninth Circuit has explained:

> The FDA has limited authority under the Federal Food, Drug, and Cosmetic Act (FDCA) to regulate dietary supplements, which include vitamin, botanical, enzyme, and amino acid products. Unlike with drugs, the FDA does not pre-approve product labels for dietary supplements. It, however, requires that the labels be truthful and not misleading, 21 U.S.C. § 343(r)(6)(B), and authorizes several categories of statements that can be made on the product if certain requirements are met.

*Greenberg v. Target Corp.*, 985 F.3d 650, 654 (9th Cir. 2021).

  Meanwhile, "States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders." *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) (alterations in original) (quoting *Plumley v. Com. of Mass.*, 155 U.S. 461, 472 (1894)). As a result, the "presumption against preemption is heightened" in the areas of state regulation

concerning issues of health and safety. *Chacanaca v. Quaker Oats Co.*, 14, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)); *see also Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 718 (1985) ("Given the presumption that state and local regulation related to matters of health and safety can normally coexist with federal regulations, we will seldom infer, solely from the comprehensiveness of federal regulations, an intent to pre-empt in its entirety a field related to health and safety.").

These cases stand for the proposition that "supplement makers can be sued for false claims, and no federal preemption exists under the FDCA either by statute or by implication, since the FDA does not occupy the field and its controls are unaffected by private false advertising suits against supplement makers." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814 (9th Cir. 2020) (quoting 1 James T. O'Reilly, Food and Drug Administration § 10:112 (Katharine A. Van Tassel, 4th ed. 2020)).

Here, the Court concludes that Congress' purpose in regulating the labeling of supplements was not to shield manufacturers from liability for failing to warn of the addictive nature of a supplement, and there is no indication that the FDA sought to preempt state laws that require such warning labels.[3] Thus, Defendant can comply with both state and federal law.

## II.     Disease Claims under the Code of Federal Regulations

---

[3] "[T]hrough many amendments to the FDCA and to FDA regulations, it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times." *Wyeth*, 555 U.S. at 570-571; *see also* 21 CFR § 201.80(e) (requiring a manufacturer to revise its label "to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug"). While *Wyeth* involved a drug as opposed to a supplement, it recognizes that it is the manufacturer, not the FDA, that is responsible for warning the consumer when it learns of serious hazards associated with a product regulated by the FDCA.

The Code of Federal Regulations offers additional interpretive instruction as to what claims a supplement manufacturer can make. 21 C.F.R. § 101.93(g). Manufacturers of dietary supplements are allowed, subject to certain requirements, to make "structure/function" claims about their supplements without prior FDA approval. *See* 21 C.F.R. § 101.93(f); 21 U.S.C. § 343(r)(6); *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 846 (9th Cir. 2019). These are claims that "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans" or "characterize[] the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function." *See* 21 U.S.C. § 343(r)(6)(A); *Dachauer*, 913 F.3d at 846. However, a manufacturer may not make a "disease claim," which "claims to diagnose, mitigate, treat, cure, or prevent disease," either explicitly or implicitly. *See* 21 C.F.R. § 101.93(g); 21 U.S.C. § 343(r)(6); *Dachauer*, 912 F.3d at 846.

Per the FDA, these regulations arose from the concern that "unproven disease claims . . . may encourage consumers to self-treat for a serious disease without a medical diagnosis or treatment"; "substitute potentially ineffective products for proven ones"; or "feel sufficiently protected from developing serious disease . . . that they delay or forego regular screening." Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000, 1001 (Jan. 6, 2000). Thus, policymakers developed rules specifically targeted towards "determining when a statement about a dietary supplement is a claim to diagnose, cure, mitigate, treat, or prevent disease ('disease claim'), and thus requires prior approval." *Id.* at 1002. The rules reflect "an interest both in preventing direct harm from such products— i.e. protecting the public from adverse events that such products might cause—and preventing the indirect harm to health that is caused when an ill person foregoes medical care in favor of ineffective self-treatment." *Id.* at 1039.

### A. An Addiction Disclosure Is Not a Disease Claim.

Federal law provides that a manufacturer may not make a "disease claim," which "claims to diagnose, mitigate, treat, cure, or prevent disease," either explicitly or implicitly, without prior FDA approval. *See* 21 C.F.R. § 101.93(g); 21 U.S.C. § 343(r)(6). Defendant begins its preferred reading of 21 U.S.C. § 343(r)(6) by making the unremarkable observation that addiction is a disease.[4] Defendant then interprets "disease claim" as including "any statement on a label that so much as refers to a disease." ECF No. 84-1, at 8. Under Defendant's interpretation, "effect" within the statute "encompasses any effect, whether positive or negative, direct or indirect." ECF No. 94, at 3. Thus, Defendant asserts that any statements that expressly or impliedly refer to the disease of addiction "are disease claims, regardless of whether they purport to diagnose, mitigate, treat, cure, or prevent the disease," and chastises Plaintiffs' effort to "collapse the definition of 'disease claim' into only those claims that relate to diagnosis, mitigation, treatment, cure, or prevention." *Id.* at 4. Defendant's cramped reading of "disease claim" finds no support in law.

Indeed, Defendant's interpretation ignores well-established canons of statutory construction and is inconsistent with the plain language and purpose of the statute. Words within statutes are not to be read "in a vacuum." *Gundy v. United States*, 588 U.S. 128, 141 (2019) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)). Rather, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.* (quoting *National Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666

---

[4] In its motion, Defendant argues at length that addiction is a disease as defined by the FDA. ECF No. 84-1, at 6-7. Indeed, three of the four documents for which Defendant requests judicial notice refer to the matter of addiction as a disease. ECF No. 84-1, at 4. Neither Plaintiffs nor the Court disagree with the proposition that addiction is a disease, nor does it affect the Court's interpretation of the applicable statute.

(2007)). In doing so, courts seek to interpret statutes in a manner that avoids "absurd results." *Tovar v. Sessions*, 882 F.3d 895, 904 (9th Cir. 2018).

Succinctly stated, a warning of kratom's addictiveness is not a "claim[] to diagnose, mitigate, treat, cure, or prevent disease." 21 C.F.R. § 101.93(g)(2). These five associated words all involve protecting one's health and are further given this related meaning by the fact that they are grouped together. *Third Nat. Bank in Nashville v. Impac Ltd., Inc.*, 432 U.S. 312, 322 (1977) ("It is a familiar principle of statutory construction that words grouped in a list should be given related meaning."). Each of these terms relates to products that are purchased to safeguard one's health by preventing disease or diagnosing it so that a disease can be mitigated, treated, or cured. Conversely, a statement that a supplement is addictive does not describe a product that improves one's health. Instead, it informs the consumer that kratom may be destructive to one's health. It does not claim to "diagnose, mitigate, treat, cure or prevent disease." 21 C.F.R. § 101.93(g)(2).

Defendant further argues that the definition of disease claim includes any statement that a supplement "has an effect on a specific disease or class of diseases." ECF No. 94, at 3 (quoting 21 C.F.R. § 101.93(g)(2)(i)). However, Defendant fails to take into account that the clause, "has an effect on a specific disease," operates exclusively to provide insight into when "a statement claims to diagnose, mitigate, treat, cure, or prevent disease." 21 C.F.R. § 101.93(g). Thus, while the Defendant interprets "effect" in § 101.93(g) as encompassing any effect on health, whether positive or negative, Defendant ignores the full operative term used, i.e. "effect on" a disease. The term is coupled to an effect on the disease, and, more specifically, a health improving effect, not a destructive one. A statement which consists of a warning of addictiveness does not purport to have an "effect on" a specific disease as contemplated by the statute. Rather, it warns that kratom can lead to the disease of addiction. Thus, Defendant's insistence on construing "effect" to include all potential negative effects considers the word in a vacuum and leads to absurd results.

Further, despite Defendant's criticism of Plaintiffs' efforts to "limit" the word "effect" to only beneficial effects, it is the statute itself that places the word within the confines of such effects that might imply disease diagnosis, mitigation, treatment, cure, or prevention. The plain language of the statute repeatedly indicates that disease claims are those which imply that a product might "diagnose, mitigate, treat, cure, or prevent disease." 21 C.F.R. § 101.93(g)(2).

The Court's reading of the statutory language is strengthened when considering the statute's stated purpose. The regulation of disease claims sought to limit unapproved statements that might encourage consumers to "self-treat," "substitute potentially ineffective products for effective ones," or "feel sufficiently protected from developing serious disease" that they forego medical care. Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000, 1001 (Jan. 6, 2000). A warning that a dietary supplement might cause a particular harm—such as addiction—is not the type of claim that might encourage an individual to self-treat or forego care. Thus, an addiction disclosure is not the type of claim the statute sought to limit.

### B. Caselaw Within the Ninth Circuit

Defendant's argument that Ninth Circuit precedent compels the Court to find that an addiction disclosure is a disease claim is unpersuasive and contradicted by prior holdings. The Ninth Circuit has expressly rejected Defendant's interpretation, observing that "a disease claim refers to a statement that the product itself can cure or treat a disease." *Greenberg v. Target Corp.,* 985 F.3d 650, 654 (9th Cir. 2021). Here, an addiction disclosure is not a statement that a product (i.e. kratom) can cure or treat disease.

Defendant relies on *Dachauer v. NBTY*, 913 F.3d 844 (9th Cir. 2019), and *Kroessler v. CVS Health Corp*, 977 F.3d 803 (9th Cir. 2020), for the proposition that "a statement that avoids reference to disease . . . may be a permissible structure/function claim, but a

statement that invokes a disease . . . is a disease claim." ECF No. 94, at 5. Neither case supports this misguided proposition. In both *Kroessler* and *Dachauer*, the Ninth Circuit considered claims espousing the positive effects of a supplement—the types of claims contemplated by policymakers in drafting the legislation at issue. In *Kroessler*, the court considered CVS's claims that certain supplements "maintain[ed] or support[ed] joint health." 977 F.3d at 806. Similarly, in *Dachauer*, the court considered claims that vitamin E supplements "support cardiovascular health," and promote "immune function, immune health, heart health, and circulatory health." 913 F.3d at 846 (internal quotation marks omitted). Both cases defined a disease claim as one that "claims to diagnose, mitigate, treat, cure, or prevent disease." *Kroessler*, 977 F.3d, at 809; *Dachauer*, 913 F.3d at 846. Indeed, the *Kroessler* court emphasized that disease claims included those which "implie[d] disease prevention or treatment." 977 F.3d at 815. Neither case considered whether the definition of a disease claim might encompass a warning, such as an addiction disclosure. Thus, *Dachauer* and *Kroessler* do not stand for the conclusion presented by Defendants: that a statement that warns of a potential disease is a disease claim. Rather, they support the finding that a disclosure of kratom's addictiveness is not a disease claim under the FDCA because it does not explicitly or impliedly claim that kratom prevents or treats disease.

### III. Structure/Function Claims.

Lastly, Defendant takes particular issue with the fact that the Court, after determining that an addiction disclosure is not a disease claim, chose to analyze such a disclosure as a structure/function claim. ECF No. 84-1, at 2 ("[T]he Court improperly and without any cited legal support found that an addiction disclosure is a structure/function claim rather than a disease claim."). As seen above, a warning of addictiveness is not a disease claim, and the FDCA, on this basis, does not make it impossible for Defendant to comply with both federal and state law.

Nor is it impossible for Defendant to comply with both the FDCA and state law when analyzing an addiction disclosure as a structure/function claim. "The FDCA's preemption provision covers structure/function claims because its requirements appear in [§] 343(r)(6), which falls under the preemption provision's umbrella." *Greenberg*, 985 F.3d at 655. Thus, the FDCA preempts claims to the extent that a plaintiff alleges that structure/function claims are false or misleading because a supplement does not prevent a particular disease. *Dachauer,* 913 F.3d at 848 (citing 21 U.S.C. § 343-1(a)(5)); *see also id.* at 848 ("[W]e hold that § 343-1(a)(5) [of the FDCA] preempts state-law requirements for claims about dietary supplements that differ from the FDCA's requirements."). However, the FDCA also requires that structure/function claims on supplement labels "be truthful and not misleading[.]" *Id.* (citing 21 U.S.C. § 343(r)(6)(B)).

Here, the operative complaint alleges that advertisements and commentary about kratom are misleading by failing to warn the consumer of its addictive qualities or include an addiction disclosure on product labels. ECF No. 50, ¶ 41. A supplement label is misleading "'if it fails to reveal facts' that are '[m]aterial with respect to consequences which may result from use of the article' under normal conditions of use or the conditions of use that the label prescribes." *Dachauer*, 913 F.3d at 849 (alterations in original) (quoting 21 C.F.R. § 1.21(a)(2)). Thus, if use of a supplement causes an increased risk of disease—a material fact "with respect to consequences which may result from use of the article"—the FDCA would deem it misleading not to reveal that fact on the label. *Id.*; *see also Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 96 (1st Cir. 2016) (noting that a structure/function claim would be misleading if it "fail[ed] to disclose the harmful aspects of the nutrient's structure/function").

Likewise, a label that omitted such a fact would be misleading under California and New York law. *See, e.g.,* Cal. Bus. & Prof. Code § 17200 (prohibiting "unfair, deceptive, untrue or misleading advertising"); N.Y. Gen. Bus. Law § 349 (prohibiting "[d]eceptive

acts or practices in the conduct of any business"). Indeed, Defendant's failure to include an addiction disclosure in its labeling has "a capacity, likelihood or tendency to deceive or confuse the public," because a reasonable consumer would not expect to suffer an increased risk of disease from taking the product. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.* 27 Cal.4th 939, 950 (2002)). Because the FDCA and state laws have the same labeling requirement with respect to failing to disclose an increased risk of disease or death, the FDCA does not preempt this particular aspect of Plaintiff's case. *See Dachauer*, 913 F.3d at 849 ("[T]he FDCA does not preempt Plaintiff's claim that Defendants' structure/function claim about immune health is misleading because their supplements increase the risk of all-cause mortality.").

Defendant's argument that it cannot comply with both state and federal law is without merit. Accordingly, federal law does not preempt Plaintiffs' state law claims. After considering the relevant statutory and regulatory authority alongside the applicable caselaw, the Court is not "left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark County School Dist.,* 727 F.3d 950, 955 (9th Cir.2013) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). Thus, the Court cannot conclude that it committed clear error in determining that an addiction disclosure is not a disease claim as contemplated by the FDCA and defined by federal statute.

Defendant has not shown that it is entitled to the "extraordinary remedy" of reconsideration. *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1139 (S.D. Cal. 2014). The Court therefore exercises its discretion to DENY Defendant's motion. *See Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation,* 331 F.3d 1041, 1046 (9th Cir. 2003).

## CONCLUSION

For the reasons set forth above, the Defendant's motion for reconsideration is DENIED.

**IT IS SO ORDERED.**

Dated: October 16, 2025

Hon. Gonzalo P. Curiel
United States District Judge